Albrecht vs. Milwaukee & Superior R. Co.

ALBRECHT, Respondent, vs. MILWAUKEE & SUPERIOR RAIL-
      WAY COMPANY, Appellant.

*January 31 — February 23, 1894.*

(1, 2) *Release signed in ignorance of its contents: How avoided.* (3) *Rail-
    roads: Injury to employee through negligence of co-employee:
    Pleading: Evidence.*

1. One who has signed a written release cannot avoid its effect by say-
    ing, merely, that he did not read it or know its contents. His
    signing under such circumstances raises a presumption of gross
    negligence, and the burden is upon him to rebut such presumption.
2. Mere inability to read English or understand the contents of the
    paper signed is no excuse in such a case.
3. In an action against a railway company, under sec. 1816a, S. & B.
    Ann. Stats., for injuries sustained by one employee through the
    negligence of another, the complaint must show clearly the relation
    between the negligent person and the company, and the proofs
    must be confined to the allegations made.

APPEAL from the Circuit Court for *Waukesha* County.

This action was brought to recover damages sustained by
the plaintiff, an employee of the defendant, as brakeman,
in consequence of a collision caused, as it is alleged, by run-
ning a switch engine out from a spur track upon the main
track when the regular, expected, and approaching train
was within twenty-five rods of the switch and in plain sight,
and that the injury was the result of the carelessness and
negligence of the engineer in charge of the switch engine.
No other charge of negligence was made in the complaint
against any officer or employee of the defendant. The an-
swer denied the charge of negligence, and, as a separate
defense, alleged, in substance, that about ten days after the
accident the plaintiff, for a valuable consideration, executed
and delivered a release under seal, whereby he released and
discharged the defendant, its agents and employees, from
any and all liability by reason of his said injuries.

The defendant's road is about twelve miles in length, and runs from Granville, in Milwaukee county, to Sussex, in Waukesha county, through a stone-quarry region, and there are quite a number of spur tracks, diverging from various points on the main line to the several quarries in near proximity to the road. The switch engine in question had been to the Peter Kiefer quarry, and had returned to within a short distance of the main line near Lannon station, and was waiting for the mixed train to pass, so it could proceed to the station. The engineer of the switch engine was under the direction and control of one Hickson, and under his express orders ran the engine out upon the main line at the time the collision occurred. At the trial considerable evidence was given to show that Hickson was yard master, and that he had charge of the switches,— that he was called yard master; but the testimony in this respect was conflicting, and there was evidence tending to show that he was only a foreman or boss or switchman. The principal effort on the part of the plaintiff at the trial was to show that his injuries were caused by the negligence of Hickson as yard master. The court charged the jury, as matter of law, on the facts of the case, that Hickson was *in such relation* to the defendant or to the running of its railroad that his negligence was the negligence of the defendant, and directed the jury to find that the plaintiff's injury was caused by the defendant's negligence.

The defendant gave in evidence the release relied on, and proof that the plaintiff signed it and had not paid back the money — $225 — paid under it. The plaintiff testified on this subject that at the time the paper was signed the witnesses Blair and Burch came to his house and asked him if he was in need of money; said they were going to pay him four months' wages, at $1.50 per day, and some for doctor's bill; that they showed him a piece of paper, and wanted him to sign it; that it was a receipt for the money;

that he didn't read the paper, that he couldn't read, and didn't know whether they read it to him or not; that he didn't understand the contents of the paper, and didn't know that it discharged or released the company from all obligation to pay him for his injuries; and that if he had so known he would not have signed it. Afterwards, he drew his wages for September, the month in which he was injured, which had not been paid, and the company subsequently paid him another month's wages. These payments were, it seems, no part of the $225 paid when the release was signed. He testified that he was a German and did not know the meaning of "liability," or "release," or "discharge," or "consideration," or "employees," or "employer;" that these words were not explained to him by Blair and Burch; that he did not know at the present time what the paper means. Being asked, "If you ever knew that instrument discharged or released or relieved the company from paying you for the injury sustained, would you have signed it?" he answered, "No." The witnesses Blair and Burch testified, in substance, that they called on the plaintiff at his home, and asked if he wanted any money. That they figured it over about how long he would probably be laid up, and that he ought to be around in four months. "Told him we thought, if we allowed him wages for that time and paid his doctor's bill, it was about what he ought to have, and he said he thought so, too. Wages were figured at $160, and doctor's bill at $65." Burch drew up a release and handed it to him to sign, and he and Blair witnessed it. "The substance of what was said was that it was a settlement. The release was read to him slowly. There was no explanation of its terms. He didn't make any complaint to the effect that he didn't understand the paper. He was in bed, bolstered up a little. We were there thirty or forty minutes." In rebuttal, the plaintiff was asked if Burch read the paper over to him in the house, and if he

said he was satisfied with that settlement, and he answered:
"No, sir, I didn't know; he didn't say nothing about a
settlement."

The court submitted to the jury the questions: "(4) Did
the plaintiff sign the paper given in evidence, knowing it
to be a full discharge and receipt in full for the damages
caused by the injury? Did he know? (5) Was the plaint-
iff informed, before the commencement of the action, of
the nature and character of said paper?" "(7) Did the
plaintiff receive the money — $225 — or retain it with the
understanding on his part that it was in satisfaction of his
injury?" These questions were answered in the negative.
In respect to them, the court, in its charge, said: "The
question is, Did he know at the time he signed the paper,—
for there is no dispute that he signed it,— did he know at
the time he signed the paper that it was a full discharge
and settlement and receipt in full for this injury?" That
the signing of the paper raised a presumption that he did
know. That they should "take into consideration what
was said and done at the interview when it was signed, all
the circumstances and surroundings of the case, as shown
by the evidence, and determine whether, at that time, he
was aware,— whether he had knowledge or understood
the import of the paper which he signed. In other words,
did he know, when signing it, that it was a settlement of
the case? If he did, then the paper is binding on him; but
if he didn't understand what he was doing,— that he
didn't understand the nature and import of the paper
he was signing,— that he didn't understand that he was
settling this claim for damages in full, but signed it for
some other reason, or it applied to wages or doctor's bill
or something else, the answer should be accordingly."

The jury assessed the plaintiff's damages at $3,000. A
motion for a new trial was denied, upon condition that the
plaintiff should remit from the verdict the $225 paid to the

plaintiff; which being done, judgment was entered against
the defendant for $2,775 and costs, and it appealed.

For the appellant there was a brief by *Winkler, Flan-
ders, Smith, Bottum & Vilas,* and oral argument by *W. K.
Gibson.*

For the respondent there were briefs by *D. H. Sumner,*
and oral argument by *Mr. Sumner* and *Mr. T. E. Ryan.*

Pinney, J.  1. The release given in evidence, upon its
face, is plainly a bar to the cause of action set out in the
plaintiff's complaint.  The instructions of the circuit court
in respect to the effect and binding force of the release are,
in substance, that, while the fact that the plaintiff executed
it raises a presumption that he knew its contents and that
it was a full settlement and discharge of the defendant
from the claim in suit, yet the plaintiff might avoid its ef-
fect by merely showing that at the time he signed it he
did not know its contents or effect.  Written instruments,
regularly executed and delivered, cannot be thus dealt with
and avoided, or their operation defeated.  There is no pre-
tense that the plaintiff was induced to sign the release
through fraud or misrepresentation, or that any deception
was practiced by misreading it to him.  His inability to
read English or understand the contents of the paper is no
excuse.  This was his own negligence.  He could and
should have sought the assistance of some one. capable of
properly informing him.  *Fuller v. Madison Mut. Ins. Co.*
36 Wis. 603; *Sanger v. Dun,* 47 Wis. 615.  It cannot be
tolerated that a man shall execute a written instrument,
and, when called upon to abide by its terms, say, merely,
that he did not read it or know what it contained.  *Upton
v. Tribilcock,* 91 U. S. 50.  The case, as put to the jury,
goes upon the assumption that the plaintiff might even
avoid the release though his execution of it was attributa-
ble to his own gross negligence.  In the case of *Sheanon v.*

Albrecht vs. Milwaukee & Superior R. Co.

*Pacific Mut. L. Ins. Co.* 83 Wis. 527, 528, the cases in this state on the question here involved were considered, and it was there held that, if the instrument was signed through the excusable mistake or negligence of the party, he is not bound by it, and that the burden of proof is on him to rebut the presumption of gross negligence. If grossly negligent, manifestly he would be bound by it; but the presumption is not a conclusive one. This is no doubt the true rule, in the absence of proof to show that the party had been deceived, misled, or overreached. Under the instructions given, the plaintiff was allowed, without showing any excuse whatever for his gross negligence, to avoid the release on the ground, simply, that at the time he signed the paper he did not know its contents and effect.

2. The right of the plaintiff to recover depended entirely on bringing his case within the statute (sec. 1816*a*, S. & B. Ann. Stats.) making a railroad company liable "for damages sustained by an employee thereof within this state without contributing negligence on his part, when such damage is caused by the negligence of any train dispatcher, telegraph operator, superintendent, yard master, conductor or engineer, or of any other employee who has charge or control of any stationary signal, target point, block or switch." He was without remedy at common law, in this case, for the consequences of the negligence of his fellow servants or co-employees. The rules of pleading require that the allegations of a complaint under this statute shall show clearly the relation between the negligent party and the company relied on, and the proofs must be confined to the allegations made. The only cause of action alleged was for the negligence of the *engineer*, and at the trial the evidence was directed to an attempt to show that Hickson was *yard master*, and that the injury was caused by his negligent and improper conduct. The case was taken from the jury on this point; the court holding, as matter of law,

that Hickson was in such relation (but what is not stated) to the company and the running of the road that his negligence was the negligence of the defendant company. The case should have been put upon some definite point or relation specified in the statute, and within the issue framed by the pleadings. Here the case, as to the ground of recovery, was submitted and decided upon an issue of which the pleadings contain no intimation whatever,— a practice certainly not to be encouraged. *Kruschke v. Stefan*, 83 Wis. 383, 384. We make these remarks in view of the fact that the case will probably be tried again, when these objections may be obviated. And in this connection we will add that we think that, in view of the evidence, the question whether Hickson was yard master or not was one of fact for the jury under proper instructions from the court.

For the error in the charge of the court in relation to the release and evidence concerning it, the judgment of the circuit court must be reversed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.