STOCKINGER, Plaintiff and Appellant, v. CENTRAL NATIONAL INSURANCE COMPANY, Defendant and Respondent: EDWARDS MOTOR COMPANY, Impleaded Defendant and Respondent.

*April 30—June 2, 1964.*

For the appellant there was a brief by *Clarence H. Mertz* of Sheboygan, attorney, and *Stan L. Lenchek* of Milwaukee of counsel, and oral argument by *Mr. Mertz*.

For the respondent there was a brief by *Lakes & Marcuvitz* of Milwaukee, and oral argument by *Alan Marcuvitz*.

DIETERICH, J. Appellant John Stockinger was called adversely by the defendants and testified that he purchased an automobile from Edwards Motors in 1961, and that he dealt exclusively with Herman Miesfeld, an Edwards salesman whom he had known for many years. Although Edwards Motors is located in Milwaukee, all negotiations took place at appellant's home in Sheboygan. On May 10, 1961, appellant signed an order for the car, and he testified that he signed three or four other insurance papers at approximately the same time. The car was delivered to him sometime later in May, 1961, and in October of that year, his nineteen-year-old son, Timothy Stockinger, collided with a tree while driving the car with his father's permission. Stockinger testified that in negotiating for the purchase of the car, he requested the salesman to take care of the insurance, and that he "probably" told him to put the same type of coverage on the new car as he had carried on his old car. There is nothing in the record to indicate the type or classification of coverage under plaintiff's policy on the old car. He stated that he subsequently received the policy in

the mail, glanced at it, and believed it to be the policy he had requested.

The salesman, Herman Miesfeld, testified that Stockinger told him he wanted the same type of insurance on the new car as he had on his old car. Miesfeld also testified that when the car was delivered, appellant signed a conditional sales contract and two insurance application forms. Miesfeld had brought the papers with him, and they had all been filled in before Stockinger signed them. One of the forms in question is printed on a sheet approximately eight inches wide and seven inches long, with a space for the applicant's signature at the bottom. There are six questions on the sheet, which are answered by checking boxes labeled "Yes" or "No." The questions checked on the form read as follows:

"2. Is the automobile owned or principally driven by a male operator under 25 years of age?" (Answer checked "No.")

"3. Is there a male operator under 25 years of age in the applicant's household?" (Answer checked "No.")

"5. Will automobile be used by any person for business purposes except in driving to and from work?" (Answer checked "No.")

The remaining questions are not material to the issues. Question 1 asks for the applicant's name; question 4 is to be answered only if the questions pertaining to drivers under the age of twenty-five are answered in the affirmative; and question 6 applies only to farmers. Immediately above the applicant's signature appears the additional question: "Is there a male member of applicant's household who will reach legal driving age during the term of this policy?" This question was also checked "No."

Stockinger also signed another form, which was later attached to his copy of the policy, and which bears the following heading: "Definition of private passenger auto-

mobile collision classifications." Immediately under the heading there appears the following:

"The collision coverage provided under this policy has been classified 1, 1F, 2A, 2AF, 2C, 2CF or 3 as designated below by the letter ' "X" ' on the basis of statements made by you or on your behalf. *Advise your agent or the company if the classification is incorrect.*" (Emphasis supplied.)

The only box checked on this form corresponds to the following statement:

"Class 1 means (Individual Owners only) :
"(a) The use of the automobile is not required by or customarily involved in the occupational duties of any person except in going to and from the principal place of occupation; and
"(b) There is no male operator of the automobile under 25 years of age resident in the named insured's household or employed as a chauffeur of the automobile."

This is also a one-page form, and Stockinger's signature appears at the bottom.

Miesfeld stated that the appellant looked the forms over, signed them, and gave them back. According to Miesfeld, the questions had all been completed before the appellant saw the forms, although he did not know who had filled them out. Miesfeld never asked appellant whether he had any children under twenty-five, or whether anyone under that age would be operating the car.

Russell Burger is the treasurer of Edwards Motors, and the Central's general agent in charge of insurance under the general "Master" policy which insures cars sold by Edwards Motors. Burger stated that he has complete authority to do the underwriting on the certificates, and that it is his policy as agent to reject all applications for insurance which indicate that the car will be operated by a driver under the age of twenty-five. He testified that he began this policy in

1958, because of his "poor experience" with drivers under that age, and that he would not have accepted the plaintiff's application if the question on under twenty-five drivers had been answered in the affirmative. Central does insure drivers under the age of twenty-five, and Burger testified that it is only his agency that refuses to accept such applications. He also stated that he has the final word on whether to accept or reject an application, and that the company cannot overrule his decisions in this respect.

Burger further testified that he gives final approval to all applications, although he did not specifically remember passing on the plaintiff's application, and that the acceptance of applications is a routine office matter. One of Burger's assistants testified that if he noticed that the forms indicated that the car would be operated by a male under the age of twenty-five, he would not even submit the application to Burger for approval.

There are two issues raised on the appeal: (1) Whether the plaintiff is bound by the misstatements in view of the fact that the forms were completed by the salesman; and (2) whether the misstatements increased the risk or contributed to the loss.

(1) *Whether plaintiff is bound by the misstatements.* The appellant contends that the misstatements in the application forms were not his representations when he signed the forms, and that Central is estopped from asserting the truth or falsity of the answers inserted in the forms by its own agent. He argues that the instant action is controlled by *Emmco Ins. Co. v. Palatine Ins. Co.* (1953), 263 Wis. 558, 58 N. W. (2d) 525, and *Taluc v. Fall Creek Farmers Mut. Fire Ins. Co.* (1931), 203 Wis. 319, 234 N. W. 364.

In the *Emmco Case,* the insurance agent filled out a blank in the policy itself indicating that the insured automobile was not encumbered, and the company later attempted to take advantage of a clause excluding coverage on any vehicle

which is subject to any encumbrance not specifically declared in the policy. This court held that the insurer, by reason of its agent having inserted a false answer in a blank in the policy without ascertaining the true fact, was estopped from establishing the falsity of such answer. The *Emmco Case* is distinguishable, however, for there the blank filled in by the agent was in the policy itself and there was nothing for the insured to sign, whereas in the instant action the salesman had checked boxes on a short application form containing only six questions, all of which were directly above the blank containing Stockinger's signature. Also, the evidence in the *Emmco Case* established that the insured never read, nor even looked at, the policy when he received it, whereas in the instant action there is testimony that Stockinger looked over the application before he signed it, and also that he glanced at the policy when he received it, and determined that it was what he had wanted.

*Taluc v. Fall Creek Farmers Mut. Fire Ins. Co., supra,* concerned a fire policy. The insurer denied liability on grounds that the insured had "intentionally, falsely, and fraudulently misrepresented" the condition of his title, the existence of an encumbrance and information as to a previous fire. This court held that since the insurance agent, who was in possession of all the facts, filled out the application for the insured, the insurer could not take advantage of an exclusionary clause providing that the policy is void if the property is subject to any encumbrance, or if there is less than a perfect title, unless such facts are specifically disclosed by the insured. The *Taluc Case* is distinguishable on the same grounds as the *Emmco Case,* for the evidence definitely established that the insured in *Taluc* signed the application without reading it, whereas there was testimony in the instant action that Stockinger looked over the application before he signed it, and that he looked at the policy itself when it was issued to him. Also there is no evidence

in the record that the salesman, Miesfeld, had knowledge of the true facts.

It is a rule of long standing that the signing of an instrument raises a strong presumption that its contents are understood by the signer, and such presumption is not overcome by his statements that he did not understand the nature of the instrument which he signed. *Rayborn v. Galena Iron Works Co.* (1914), 159 Wis. 164, 169, 149 N. W. 701.

The two forms relating to drivers under the age of twenty-five which were signed by Stockinger are short, one-page questionnaires. One contains only six short questions, all appearing directly above the signature, and the other, while slightly longer, has only one box checked and that box precedes a statement that there is no male operator under the age of twenty-five who operates the car. This, too, appears above the signature. There was testimony that Stockinger looked over these instruments before he signed them, although now he contends that he was not aware of their contents. The questionnaires are short, clear, and could be understood by the average person upon the most cursory inspection. The appellant Stockinger is clearly bound by the misstatements appearing on the signed forms accompanying his application for insurance.

(2) *Relation of the misstatements to the risk.* The effect of a misstatement appearing on an insurance application form is covered by statute. Sec. 209.06 (1), Stats., provides as follows:

"No oral or written statement, representation or warranty made by the insured or in his behalf in the negotiation of a contract of insurance shall be deemed material or defeat or avoid the policy, unless such statement, representation or warranty was false and made with intent to deceive, or unless the matter misrepresented or made a warranty increased the risk or contributed to the loss."

Under this statute, there are three grounds for avoiding a policy: (1) If the statement was false and made with intent to deceive; (2) if the statement increased the risk; or (3) if the statement contributed to the loss. *Polar Mfg. Co. v. Integrity Mut. Ins. Co.* (1959), 7 Wis. (2d) 443, 447, 96 N. W. (2d) 822. If the misrepresentation increases the risk, or if it contributes to the loss, that is sufficient to defeat recovery even if there is no actual intent to deceive. *Olson v. Herman Farmers Mut. Ins. Co.* (1925), 187 Wis. 15, 18, 203 N. W. 743; *Polar Mfg. Co. v. Integrity Mut. Ins. Co., supra,* page 446.

Since the representations in the application relating to use of the automobile by male operators when the age of twenty-five are admittedly false, the first question becomes whether such representations were material to the risk. The question of materiality is one of fact to be determined by the trier of facts. *Olson v. Herman Farmers Mut. Ins. Co., supra.* The real test is not that the insurer was influenced, but rather that the fact, if truthfully stated, might reasonably have influenced the insurer in deciding whether it should accept or reject the risk. *Haas v. Integrity Mut. Ins. Co.* (1958), 4 Wis. (2d) 198, 203, 90 N. W. (2d) 146.

The appellant relies on *Martell v. Klingman* (1960), 11 Wis. (2d) 296, 105 N. W. (2d) 446, in support of his argument that the misstatements were not material to the risk. In that case the applicant signed a form in which the agent had written the information in the spaces provided. One of the spaces in the form asked for a description of all driving violations or convictions, and the agent wrote "none," although the applicant had, in fact, been fined for speeding and reckless driving in the past. The insurance company made offers of testimony of members of the underwriting firm who passed upon the risk for the company, which offers were rejected by the trial court. In one instance the testimony offered was that had the witness known of two traffic

violations, she would have consulted with her superior as to
the issuance of the policy, although she was unable to state
definitely as to whether or not the policy would have been
issued. In the other instance, the offer was to show that in
the event the witness had known of these violations it is
possible that he might then have disapproved of the issuance
of the policy. This court found that there was no error on
the part of the trial court in rejecting this testimony inas-
much as it was in indefinite terms and did not purport to
establish a probability that an insurer, acting reasonably and
naturally in accordance with the usual practice, would have
rejected the risk if it had knowledge of the convictions.

The very points in the *Martell Case* relied upon by the
appellant serve to distinguish that case from the instant
action. Here there was uncontradicted testimony that Bur-
ger, as the insuring agent for Central, would not have
approved the policy if the questions relating to under
twenty-five drivers had been answered in the affirmative.
This was not vague and indefinite testimony as in the
*Martell Case,* but was testimony of the agency's office policy
which had been in existence for five years, and which was
under the agent's absolute and final control. Burger testified
that there was no appeal from his decision on whether or
not to accept a risk. There was other testimony indicating
that rejection of applications revealing the presence of drivers
under the age of twenty-five in the applicant's household is
a matter of routine office policy. The record is barren of
any evidence tending to show that Burger's practice in this
respect is not usual and customary in the industry. We con-
sider that the requirements of the rule set forth in *Haas v.
Integrity Mut. Ins. Co., supra,* have been more than met,
and that the misstatement on the application was material to
the risk.

In the instant action, the loss occurred while the car was
being driven by the plaintiff's nineteen-year-old son—the

very risk which, according to the testimony of Burger, would not have been accepted if the application indicated that the car would be used by a male operator under the age of twenty-five. In this sense, the misstatement was not only material, but directly contributed to the loss.

Appellant contends that the questions pertaining to drivers under the age of twenty-five pertain to rating factors which bear only upon premium adjustment, rather than to basic underwriting considerations. This argument is, at best, an exercise in semantics, for it may be assumed that premium rates are directly proportional to the risk involved. It is a matter of common knowledge that automobile insurance companies charge higher premiums for under twenty-five drivers because of the greater risks involved in insuring such drivers. This was alluded to in Burger's testimony when he stated that he began the policy of rejecting applications indicating an under twenty-five driver because of his "poor experience" with young drivers.

We determine that the trial court was correct in its finding that the misstatements on the forms signed by the appellant were material to, and increased the risk of loss. Since the appellant is bound by these misstatements, it follows that the judgment of the trial court must be affirmed.

*By the Court.*—Judgment affirmed.