OLFE, Plaintiff-Appellant, v. GORDON, and another, De-
fendants-Respondents.

Supreme Court

*No. 77–020. Submitted on briefs November 7, 1979.—Decided
January 8, 1980.*
(Also reported in 286 N.W.2d 573.)

174

For the appellant the cause was submitted on the brief of *Edward J. Simarski* and *Simarski, Goodrich & Stack* of Milwaukee.

For the respondents the cause was submitted on the brief of *Joseph A. Bradley* and *Law Offices of Richard J. Palmersheim* of Milwaukee.

WILLIAM G. CALLOW, J. This is an appeal by plaintiff-appellant Frieda Olfe (Olfe) from a judgment entered after the trial court granted the motion by defendants-respondents Attorney Robert N. Gordon (Gor-

don) and St. Paul Fire & Marine Insurance Company to dismiss on the ground of insufficiency of the evidence, pursuant to sec. 805.14(3), Stats. The action is based on a claim of negligence on the part of Gordon in a transaction involving the sale of land by Olfe, then Gordon's client. The trial court ruled at the close of Olfe's case that there was insufficient evidence to establish a prima facie case against the respondents and that a lack of expert testimony relating to the standard of care required of attorneys in similar circumstances precluded the jury from passing on the alleged negligence of Gordon. We reverse.

Early in 1971 Olfe, a widow about sixty-two years of age, was approached by Elmer J. Demman (Demman) who proposed buying Olfe's three-family house and the land upon which it was situated for the purpose of constructing an office building. A verbal agreement was reached between Olfe and Demman in which Demman was to purchase the property for $87,000. Olfe, after meeting with Demman and his attorney, decided she needed an attorney. Olfe consulted Gordon, telling him that she wanted a first mortgage. Olfe testified that when she left the office Gordon "was going to go ahead with getting the documents ready to sign for a first mortgage." On two subsequent occasions, Olfe testified she had contact with Gordon during which she was told that work was proceeding on obtaining a first mortgage for her.

On September 15, 1971, Olfe, Gordon, Demman, and Attorney C. J. Schloemer met with Demman's attorney at his office. Gordon told Olfe he brought Schloemer, his law partner, to the meeting because Schloemer "was well versed" in real estate matters. The first offer Demman's attorney presented to Schloemer was unacceptable, and a second offer to purchase was prepared and presented to Schloemer who reviewed the document and handed it to Gordon. Gordon looked at the document

and asked Olfe to sign it. Prior to signing the offer to purchase, Olfe asked: " 'This isn't a second mortgage, is it?' " Gordon gave no answer and Schloemer said: "It is second only to cost of construction." Olfe signed the offer to purchase. She testified she understood Schloemer's remark to mean "that a second mortgage was only on the new building that was going to go up and that the land and the home on it was still under first mortgage." Olfe testified she did not read the document because "I'm not very good at legal terms and that is the reason I hired an attorney to represent me to read it and to see that I was signing for a first mortgage."

Olfe received about $22,500 of the purchase price on November 4, 1971, the date of the closing. The balance of about $64,500 was to be paid in two equal installments during the two succeeding years. No subsequent payments were ever made to Olfe prior to a foreclosure proceeding which was commenced by Continental Savings and Loan, the holder of the first mortgage. It was at this time that Olfe discovered she had only a second mortgage on the entire property. A judgment of foreclosure was entered. Schloemer later negotiated on Olfe's behalf a sale of her second mortgage interest to Continental Savings and Loan for $37,500.

Olfe commenced this action against Gordon and his professional liability insurer to recover the difference between the unpaid principal balance on the mortgage note and the amount which she had received from Continental Savings and Loan. Her complaint alleged she hired Gordon to protect and represent her interest and that "she wanted a first mortgage on said premises if the said purchaser was unable to pay the entire sum of the sale price at the closing." The complaint alleged that Gordon was negligent and careless in that

"a. He failed to require and specifically note in the offer to purchase executed by plaintiff and Demann [sic]

that plaintiff's security interest in the event of Demann's inability to pay the entire purchase price at closing, would be a first mortgage as plaintiff advised defendant she wanted;

"b. He failed to draft or required to be drafted a mortgage for plaintiff to be signed by Demann that would be senior and prior to any mortgage that Demann intended to and then did obtain on said premises of sale that were executed simultaneoudly [sic] with the mortgage executed to plaintiff, and negligently and carelessly permitted with full knowledge on his part, a mortgage executed by Demann to plaintiff which was second or junior to the mortgage Demann executed simultaneously to a lending institution.

"c. He failed to properly, fully and adequately advise plaintiff of the risks and hazards inherent in the situation of plaintiff accepting a mortgage from Demann that was juniour [sic] to the mortgage of a lending institution in the circumstances existing in the period from September to November 4, 1971 during which time defendant was the attorney for plaintiff.

"d. He failed to specifically advise plaintiff prior to said sale date of Nov. 4, 1971 and on said sale date that the mortgage executed by Demman and to be executed by Demman was junior to to [sic] the mortgage executed by Demman to a lender."

Olfe's appeal presents two issues:

(1) Is expert testimony required to establish the standard of care on the part of an attorney in a malpractice action; and if so, is such testimony required to establish negligence on the part of Gordon?

(2) Does the record contain sufficient credible evidence, when taken in the light most favorable to Olfe, to warrant sending the case to the jury?

This court stated the rule on a lawyer's liability in *Gustavson v. O'Brien*, 87 Wis.2d 193, 199, 274 N.W.2d 627 (1979):

" '. . . "an attorney must be held to undertake to use a reasonable degree of care and skill, and to possess to a

reasonable extent the knowledge requisite to a proper performance of the duties of his profession, and, if injury results to the client as a proximate consequence of the lack of such knowledge or skill, or from the failure to exercise it, the client may recover damages to the extent of the injury sustained; . . ." ' "

quoting, *Malone v. Gerth*, 100 Wis. 166, 173, 75 N.W. 972 (1898). However, the question of whether expert testimony is required to establish the standard of care required of attorneys in legal malpractice actions has not been decided by this court. Addressing this issue, other jurisdictions have adopted the same standard with respect to the need for expert testimony in legal malpractice cases that they have adopted in medical malpractice cases; that expert testimony is generally necessary except where the matters in issue fall within the area of common knowledge and lay comprehension. *See, e.g.,* *Olson v. North,* 276 Ill. App. 457, 475 (1934) ; *Central Cab Co. v. Clarke,* 259 Md. 542, 270 A.2d 662, 667 (1970) ; *Hill v. Okay Construction Company, Inc.,* 312 Minn. 324, 252 N.W.2d 107, 116 (1977) ; *Sanders v. Smith,* 83 N.M. 706, 496 P.2d 1102, 1104 (Ct. App. 1972) ; *Hansen v. Wightman,* 14 Wash. App. 78, 538 P.2d 1238 (1975) ; Annot., 17 A.L.R.3d 1442 (1968).

In medical malpractice actions, Wisconsin law generally requires the plaintiff to introduce expert testimony as to the standard of care and the defendant's departure from it. "Without such testimony the jury has no standard which enables it to determine whether the defendant failed to exercise the degree of care and skill required of him." *Froh v. Milwaukee Medical Clinic, S. C.,* 85 Wis.2d 308, 317, 270 N.W.2d 83 (Ct. App. 1978) ; *Francois v. Mokrohisky,* 67 Wis.2d 196, 204, 226 N.W.2d 470 (1975). However, such expert testimony is not necessary when the matters to be proven are within the area of common knowledge and lay comprehension. "This court has long distinguished between matters of common

knowledge and those needing expert testimony to explain and has held that expert testimony should be adduced concerning matters involving special knowledge or skill or experience on subjects which are not within the realm of the ordinary experience of mankind, and which require special learning, study, or experience." *Cramer v. Theda Clark Memorial Hospital*, 45 Wis.2d 147, 150, 172 N.W. 2d 427 (1969).

This court has acknowledged the similarity between medical and legal malpractice actions. In *Denzer v. Rouse*, 48 Wis.2d 528, 180 N.W.2d 521 (1970), this court held that, as in medical malpractice cases, the statute of limitations in attorney malpractice cases runs from the date of the alleged negligent act and resultant injury. *Id.* at 531–32. *See also: Boehm v. Wheeler*, 65 Wis.2d 668, 223 N.W.2d 536 (1974). Regarding the issue presented on appeal, we conclude that the standard with respect to the need for expert testimony is substantially the same in both types of actions. As stated by the Minnesota Supreme Court in *Hill v. Okay Construction Company, Inc.*:

"Expert testimony should be generally required to establish the standard of care applicable to an attorney whose conduct is alleged to have been negligent and further to establish that his conduct deviated from that standard. That general rule should be subject to the exception that such expert testimony is not necessary in cases where the conduct complained of can be evaluated adequately by a jury in the absence of expert testimony." 312 Minn. at 337.

Thus expert testimony is not required to establish a standard of care in cases involving conduct not necessarily related to legal expertise where the matters to be proven do not involve "special knowledge or skill or experience on subjects which are not within the realm of the ordinary experience of mankind, and which require special learning, study, or experience." *Cramer v. Theda Clark Memorial Hospital, supra* at 150. Nor is expert

testimony required "[w]here no issue is raised as to defendant's responsibility . . . , where the negligence of defendant is apparent and undisputed, and where the record discloses obvious and explicit carelessness in defendant's failure to meet the duty of care owed by him to plaintiff, [for] the court will not require expert testimony to define further that which is already abundantly clear." *House v. Maddox*, 46 Ill. App.3d 68, 73, 360 N.E.2d 580, 584 (1977).

Since Olfe did not present expert testimony to establish the standard of care and a departure from that standard, we must determine whether Gordon's actions fall within the exception to the rule requiring expert testimony. Olfe's first two allegations, that Gordon failed to provide in the offer to purchase that Olfe's security interest would be a first mortgage and that he failed to draft or cause to be drafted a mortgage that would be senior to any other Demman would obtain on the premises of sale, are contentions that Gordon is liable for damages caused by his negligent disregard of Olfe's instructions. The legal theory on which these allegations are premised is well established:

"It has generally been recognized that an attorney may be liable for all losses caused by his failure to follow with reasonable promptness and care the explicit instructions of his client. Moreover, an attorney's honest belief that the instructions were not in the best interests of his client provides no defense to a suit for malpractice." [Footnotes omitted.]

Note, *Attorney Malpractice*, 63 Colum. L. Rev. 1292, 1302 (1963). The attorney-client relationship in such contexts is one of agent to principal, and as an agent the attorney "must act in conformity with his authority and instructions and is responsible to his principal if he violates this duty." *Ford v. Wisconsin Real Estate Exam-*

*ining Board,* 48 Wis.2d 91, 102, 179 N.W.2d 786 (1970).[1] While actions for disregard of instructions can be based upon fiduciary and contractual principles,[2] the principal's cause of action for an agent's breach of duty may also lie in tort. "[I]f a paid agent does something wrongful, either knowing it to be wrong, or acting negligently, the principal may have either an action of tort or an action of contract." Restatement (Second) of *Agency,* sec. 401, Comment *a,* 238 (1958). *See also: Estate of Pratt,* 221 Wis. 114, 120, 266 N.W. 230 (1936), where this court stated, "It is elementary that a principal has a cause of action sounding in tort against his agent when the latter

---

[1] "In accordance with rules governing the liability of agents toward their principals for violations of instructions . . . , an attorney's duty, where he is specially instructed, is to follow the instructions of his client, except as to matters of detail connected with the conduct of the suit, and he is liable for all losses resulting from his failure to follow such instructions with reasonable promptness and care." 7 C.J.S. *Attorney and Client,* sec. 148 (1937). *See: Lally v. Kuster,* 177 Cal. 783, 171 P. 961, 962 (1918) ("We have here, then, a direct loss due to disobedience of the client's instructions, for which respondent [the attorney] is liable."); *Trustees of Schools of Township 42 North v. Schroeder,* 2 Ill. App.3d 1009, 278 N.E.2d 431, 433 (1971) ("Whenever an attorney disobeys the lawful instructions of his client he is liable for any loss which ensues from such act."); *Daugherty v. Runner,* 581 S.W.2d 12, 16 (Ky. App. 1978) ("The relationship [between client and attorney] is generally that of principal and agent; however, the attorney is vested with powers superior to those of any ordinary agent because of the attorney's quasi-judicial status as an officer of the court; thus the attorney is responsible for the administration of justice in the public interest, a higher duty than any ordinary agent owes his principal. Since the relationship of attorney-client is one fiduciary in nature, the attorney has the duty to exercise in all his relationships with this client-principal the most scrupulous honor, good faith and fidelity to his client's interest.").

[2] Restatement (Second) of *Agency,* sec. 400, 235–36 (1958); Note, *Attorney Malpractice,* 63 Colum. L. Rev. 1292, 1302 n. 81 (1963).

violates a duty that he owes to the former."[3]  Expert testimony is not required to show that the agent (attorney) has violated his duty.

Olfe does not allege that she was harmed by a lack of legal expertise on the part of Gordon. She does not assert that Gordon failed to comply with statutes prescribing the necessary formalities concerning the documents' validity. Rather, she seeks to hold Gordon liable for his failure to effectuate her intent, even though the documents he prepared were not legally invalid. While preparation of an offer to purchase and preparation of a mortgage involve "special knowledge or skill or experience on subjects which are not within the realm of the ordinary experience of mankind, and which require special learning, study, or experience," *Cramer v. Theda Clark Memorial Hospital, supra* at 150, proof of *negligence in failing to follow specific instructions* concerning the nature and purpose of the documents desired does not require expert testimony. This case is controlled by the law of agency, and the attorney-client relationship does not alter Gordon's alleged relationship to Olfe as an agent to his principal. As such, duties of care owed Olfe by Gordon are established not by the legal profession's standards but by the law of agency. A jury is competent to understand and apply the standards of care to which agents are held.[4] This case falls within the exception to the rule that expert testimony is necessary to establish

___

[3] This rule has recently been applied in a professional liability action to allow recovery for negligence under ordinary tort principles, notwithstanding the agent's assertion that liability could be imposed solely under contract theory. *See: McAlvain v. General Insurance Co. of America,* 97 Idaho 777, 554 P.2d 955, 958–59, n. 1 (1976). In *McAlvain,* the agent was an insurance agency acting through its employees; the breach of duty was a failure to comply with the instructions of the principal (the insured) to procure sufficient insurance to cover the principal's inventory.

[4] *See, e.g.:* Wis J I—*Civil,* 4000 [Agency: Definition]; 4020 [Agent's Duties Owed to Principal].

the negligence of attorneys. Here Olfe concedes that the documents drafted by Gordon were valid instruments but argues they failed to effectuate her intent and were inconsistent with her specific instructions. We conclude that expert testimony was not required to establish the applicable standard of care and Gordon's alleged departure from that standard in order to have a jury determine the merits of Olfe's allegations that Gordon was negligent in that he failed to properly draft documents consistent with Olfe's instructions.

In granting Gordon's motion to dismiss,[5] the trial court noted that, when Olfe asked if the offer to purchase referred to a second mortgage, she was told it was "second only to cost of construction." Following that comment, she signed the offer to purchase. The offer to purchase provides that payment was to be secured by a note and mortgage, " 'which mortgage shall—be subordinated only to buyer's construction and building mortgage.' "

When considering the correctness of the action of the trial court, this court must view the evidence in the light most favorable to the appellant. *Gries v. First Wisconsin National Bank of Milwaukee,* 82 Wis.2d 774, 777, 264 N.W.2d 254 (1978). However, this court has held that

---

[5] Section 805.14(1) and (3), Stats., provide:

"805.14 **Motions challenging sufficiency of evidence; motions after verdict. (1)** TEST OF SUFFICIENCY OF EVIDENCE. No motion challenging the sufficiency of the evidence as a matter of law to support a verdict, or an answer in a verdict, shall be granted unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party."

"(3) MOTION AT CLOSE OF PLAINTIFF'S EVIDENCE. At the close of plaintiff's evidence in trials to the jury, any defendant may move for dismissal on the ground of insufficiency of evidence. If the court determines that the defendant is entitled to dismissal, the court shall state with particularity on the record or in its order of dismissal the grounds upon which the dismissal was granted and shall render judgment against the plaintiff."

it will not reverse a trial court's ruling on a motion for dismissal (nonsuit) unless such ruling is clearly wrong.

" '. . . It is considered that these cases and perhaps others containing like language were all intended to express and do in fact express the same general idea, namely, that when the trial judge rules, either on motion for nonsuit, motion for a directed verdict, or motion to set aside the verdict, that there is or is not sufficient evidence upon a given question to take the case to the jury, the trial court has such superior advantages for judging of the weight of the testimony and its relevancy and effect that this court should not disturb the decision merely because, on a doubtful balancing of probabilities, the mind inclines slightly against the decision, but only when the mind is clearly convinced that the conclusion of the trial judge is wrong.' "

*Trogun v. Fruchtman,* 58 Wis.2d 569, 585, 207 N.W.2d 297 (1973), quoting, *Slam v. Lake Superior T. & T. Ry.,* 152 Wis. 426, 432, 140 N.W. 30 (1913).

To establish a prima facie case subjecting an agent to liability in tort, the principal must show a duty of care owed by the agent to the principal, a breach of that duty, and injury to the principal as a proximate result of the breach. In contending that Olfe's proof does not establish a prima facie case, Gordon asserts that his alleged breach of the duty to obey the instructions of his principal was not the cause of Olfe's injury. Gordon relies on the following statement from *Lien v. Pitts,* 46 Wis.2d 35, 46, 174 N.W.2d 462 (1970) :

" 'It is a rule of long standing that the signing of an instrument raises a strong presumption that its contents are understood by the signer, and such presumption is not overcome by his statements that he did not understand the nature of the instrument which he signed.' "

Quoting, *Stockinger v. Central National Ins. Co.,* 24 Wis. 2d 245, 252, 128 N.W.2d 433 (1964).

Other than *Lien v. Pitts, supra,* no decision of this court can be found where the presumption stated in that

case was employed for a purpose other than to prevent harm to a person who relied on an instrument and signature which would be caused when the signatory seeks to avoid obligations imposed by the instrument.[6] Gordon, of course, is not in such a position. Nor is *Lien v. Pitts, supra,* squarely applicable to this case. In *Lien,* the defendants were held liable for damages for breach of a contract, an offer to purchase, they later claimed did not reflect their intent. The defendants unsuccessfully counterclaimed against the plaintiffs' agents who had drafted the offer, alleging negligence in the negotiations leading to the terms and the signing of the contract. This court applied the presumption in affirming the trial court's dismissal of the counterclaim even though the third-party defendants were not parties to the contract. Although the third-party defendants were subject to a duty not to deceive the defendants, they acted as agents of the plaintiffs and drafted the contract while under a duty to act in the plaintiffs' interests, and not the defendants-third-party-plaintiffs' interests.

Olfe, however, seeks recovery from *her* agent, employed to protect her interests, and in so doing she does not rely solely on her statement that she did not understand the contents of the instruments. She testified she asked, " 'This isn't a second mortgage, is it?' " Gordon gave no answer, and Schloemer said, "It is second only to cost of construction." In our view, Gordon's silence and Schloemer's answer could reasonably be viewed by one or more

[6] *Stockinger v. Central National Ins. Co.,* 24 Wis.2d 245, 252, 128 N.W.2d 433 (1964); *Rayborn v. Galena Iron Works Co.,* 159 Wis. 164, 169, 149 N.W. 701 (1914); *Ross v. Northrup, King & Co.,* 156 Wis. 327, 336, 144 N.W. 1124 (1914); *Schweikert v. John R. Davis Lumber Co.,* 147 Wis. 242, 249, 133 N.W. 136 (1911); *Deering v. Hoeft,* 111 Wis. 339, 343, 87 N.W. 298 (1901); *Jackowski v. Illinois Steel Co.,* 103 Wis. 448, 454, 79 N.W. 757 (1899); *Kowalke v. Milwaukee Electric Ry. & Light Co.,* 103 Wis. 472, 480, 79 N.W. 762 (1899); *Conant v. Estate of Kimball,* 95 Wis. 550, 556–57, 70 N.W. 74 (1897); *Albrecht v. Milwaukee & Superior Ry. Co.,* 87 Wis. 105, 109, 58 N.W. 72 (1894).

jurors as misinforming Olfe or insufficiently informing her, as she alleges. These responses could be viewed as having the effect of reinforcing Olfe's perception of the standing of the mortgage.[7]

Moreover, Gordon's argument overlooks Olfe's contention that the reason she employed Gordon was that she desired her security interest in the property sold to Demman to be legally protected. Had Olfe desired to make the sale in an informal manner and take as security Demman's assertion that he would pay her, there would have been no need to employ Gordon to prepare an offer to purchase and a mortgage. Olfe cannot be barred from recovery merely because she concluded Gordon had properly performed the services for which he was employed.

Analogous are cases which refuse to find contributory negligence on the part of a client in similar circumstances. As stated by one commentator:

"[C]ontributory negligence should have no place as a defense against an obedient client who originally hired the attorney to help him avoid the very acts which are now labelled negligent.

". . .

"The layman should be penalized for ignorance of legal matters only when he refuses proper help, and not when the attorney he hires fails in his duties."

Leavitt, *The Attorney as Defendant,* 13 Hast. L.J. 1, 32 (1961). Thus in *Theobald v. Byers,* 193 Cal. App.2d 147, 13 Cal. Rptr. 864 (1961), an action brought by clients

---

[7] We also note that jurors might conclude that Olfe's misinterpretation was not an unreasonable reading of a less than clear contract. *Cf.: Stockinger v. Central National Ins. Co.,* 24 Wis.2d at 252 (signatory's testimony will not overcome presumption where instrument was "short, clear and could be understood upon the most cursory inspection"); and *Ross v. Northrup, King & Co.,* 156 Wis. at 335 (same, where instrument contained "information that was literally staring him in the face").

against an attorney employed to prepare a note and chattel mortgage, the California Court of Appeal rejected the attorney's argument that the clients were negligent in failing to inquire of the defendant or any other attorney whether the mortgage should be acknowledged or recorded or in failing to arrange for the acknowledgment and recording of the mortgage themselves.

"We have before us an action in which the very reason that appellants employed respondents was that they desired that their loan to Higgins and Fette be secured in a manner which was legally efficacious. Had appellants desired to make the loan in an informal manner and place their trust solely in the continued solvency of Higgins and Fette, there would obviously have been no need whatever to employ an attorney to prepare the necessary papers. The trial court specifically found that all parties to the loan wanted the lenders protected in the transaction. Surely there could have been no other reason to employ respondents. The trial court also found that the respondents were negligent and that their negligence was a proximate cause of the loss sustained by appellants, but that appellants are barred from recovery solely because of their failure to themselves perform the very acts for which they employed respondents. Such a result cannot be upheld. Clearly the value of an attorney's services in connection with a transaction of this nature consists largely of his superior knowledge of the necessary legal formalities which must be fulfilled in order for a document to be valid in the eyes of the law. If laymen such as appellants were already familiar with the requirements to be met in order to attain the legal status of secured creditors, it would seem likely that there would be a considerable decrease in the demand for attorneys' services. Appellants employed respondents to perform a specific legal service for them. Respondents negligently failed to do so. Under these circumstances the trial court erred in finding appellants guilty of contributory negligence merely because they failed to record the chattel mortgage themselves or hire another attorney to do so." **13** Cal. Rptr. at 866–67.[8]

While we express no opinion as to the merits of her allegations, we conclude that Olfe's evidence, when viewed in the light most favorable to her case, presents questions for the jury's consideration as to the existence and apportionment of causal negligence. Accordingly, the trial court erred in granting Gordon's motion to dismiss.

*By the Court.*—Judgment reversed and cause remanded for a new trial.

---

[8] *Accord: Feil v. Wishek,* 193 N.W.2d 218, 225–26 (N.D. 1971); *Smith v. Lewis,* 31 Cal. App.3d 677, 107 Cal. Rptr. 95, 105 (1973) *aff'd. and opinion vacated* 13 Cal.3d 349, 118 Cal. Rptr. 621, 530 P.2d 589 (1975) ("Respondent cannot be held to be contributively negligent because she relied upon her attorney's advice.").