Robert B. Corris, S.C., Plaintiff-Respondent,
v.
Barton Peck and Rose Peck Trust, Defendants-Appellants.
No. 04-0866.
Court of Appeals of Wisconsin.
Opinion Filed: January 25, 2005.
Before Curley, Kessler and Anderson, JJ.
¶ 1 CURLEY, J.
Barton Peck, individually and on behalf of the Rose Peck Trust, appeals from the judgment and orders of the trial court, dismissing his counterclaim with prejudice, denying his motions after verdict, and awarding $18,464.06 plus costs to Robert B. Corris, S.C. Peck contends that the jury's verdict was perverse and that the trial court erred in granting Corris's motion for summary judgment on Peck's counterclaim of professional malpractice. Because the trial court did not erroneously exercise its discretion in determining that the verdict was not perverse, and Peck's counterclaim of professional malpractice was properly denied, we affirm.

I. BACKGROUND.
¶ 2 In October 2000, Peck was sued, individually and on behalf of the Rose Peck Trust, by an Illinois corporation. Peck hired Corris to defend him and it was orally agreed that Corris would be paid on an hourly basis. Peck paid an initial retainer of $2500, and then consistently made payments through January 2001. In February 2001, Peck and Corris entered into a written agreement confirming that Peck had agreed to be represented by Corris, and indicating the applicable hourly rate. In March 2001, Peck requested that the fee arrangement be modified, and asked if he could make $600 monthly installment payments until August 2001, at which time he would pay Corris the outstanding balance in full. Corris agreed, and confirmed the arrangement in writing.
¶ 3 On August 7, 2001, Peck did not pay Corris in full as they had previously agreed. Corris informed Peck that he expected to be paid in full as promised, and after a series of meetings and letters, Corris moved to withdraw from the case when Peck wo uld not pay for the services being rendered or the outstanding invoices. The Illinois court first granted the motion conditioned upon the appearance of new counsel, and then, in October 2001, unconditionally granted Corris's motion to withdraw. In November 2001, Peck wrote to Corris indicating that he was closing a real estate transaction in January 2002, and would pay his outstanding bill at that time.
¶ 4 After Corris withdrew from the case, Peck retained new counsel and eventually filed a motion for summary judgment to counter a motion for declaratory judgment filed by the Illinois corporation. The federal district court subsequently denied Peck's motion and granted that of the Illinois corporation.
¶ 5 In Januar y 2002, Peck did not pay Corris as promised. In May 2002, Corris commenced an action for breach of contract to recover the fees and expenses that remained unpaid. Peck counterclaimed for legal malpractice. In response, Corris filed a motion for summary judgment on the counterclaim. In February 2003, the trial court held a hearing on Corris's motion and granted summary judgment, dismissing the counterclaim.[1] The trial court made clear that the only issue that remained was the contractual disputewhether Corris performed the work when he said he did and whether the work was reasonable and necessary under the contractual agreement for legal representation.
¶ 6 In December 2003, the case was tried before a jury. The jury returned a verdict in favor of Corris, awarding him $24,065.59, which was more than he asked for. Several motions were filed after the verdictCorris sought sanctions and Peck sought judgment n.o.v., to change the verdict answer, and a new trial. The trial court denied Peck's motions except as follows: "pursuant to sec. 805.15(6) the court determines that the amount which as a matter of law is reasonable is $18,025.59 and a new trial on the issue of damages be, and hereby is GRANTED, unless within ten (10) days the plaintiff elects to accept judgment in the amount of $18,025.59." The trial court also granted one of Corris's motions for sanctions, but denied the other. After Corris accepted the reduced amount, judgment was entered. Peck now appeals.

II. ANALYSIS.

A. The trial court did not erroneously exercise its discretion in determining that the jury's verdict was not perverse.
¶ 7 "A jury's verdict must be affirmed if there is any credible evidence to support it." Kinship Inspection Serv., Inc. v. Newcomer, 231 Wis. 2d 559, 570, 605 N.W.2d 579 (Ct. App. 1999).
A verdict is perverse when the jury clearly refuses to follow the direction or instruction of the trial court upon a point of law, or where the verdict reflects highly emotional, inflammatory or immaterial considerations, or an obvious prejudgment with no attempt to be fair.
Redepenning v. Dore, 56 Wis. 2d 129, 134, 201 N.W.2d 580 (1972) (footnote omitted). As such, "[t]he trial judge ... is in a better position to determine whether perversity permeated the verdict[.]" Id. The trial court's conclusion in regard to whether the verdict was perverse, therefore, will not be overturned absent an erroneous exercise of discretion. See id.
¶ 8 Peck contends that the jury "ignored uncontroverted evidence" and "awarded damages which were far in excess of that which could be rationally awarded based upon even the wildest understanding of the record," and in so doing, "stood in open defiance of its obligation to comply with the trial court's instruction." He also asserts that the verdict was the result of an unfair prejudgment of the case. He alleges that the jurors had no interest in reviewing the invoices or carefully reading the contract, and had they considered the "uncontroverted" facts, they would never have "undertak[en] credibility resolutions." He insists that they "simply did not deliberate," speculates as to what they were doing during their deliberations, and concludes that they could not possibly have properly scrutinized and considered the contract's requirements and whether Corris performed under the contract during that short period of time, especially considering the fact that they were eating lunch.
¶ 9 Peck basically reargues his case, but the fact remains that this was, essentially, a determination of credibility and sufficiency of the evidence. And, here, we are concerned only with whether the trial court properly exercised its discretion in concluding that the verdict was not perverse. In denying his postverdict motions, the trial court commented on the evidence in the record and stated:
Now, I can't  I can't get in their minds as to what  how what they found in terms of credibility or how they looked at both of you guys. I do think that they found that his position was more credible primarily based on these little notes that were put into the record whereby you basically approve of things that he's doing, and then now you're saying you didn't really approve but this is the reason why. There was an inconsistency there, Mr. Peck, to be candid, that I could see where the jury could pick up on.
Now, what they wanted to do with it, that's their province; what weight they wanted to give to that inconsistency, that is their issue, not mine. But there's certainly credible evidence in the record to indicate that they found that there was a contract and that he performed pursuant to that contract.
Thereafter, the court determined that the verdict was excessive, but not perverse, and determined that $18,025.59 was the reasonable value of the amount in controversy, and gave Corris the option to accept the reduced amount or seek a new trial. In light of the record, that was reasonable, and proper. See Powers v. Allstate Ins. Co., 10 Wis. 2d 78, 91-92, 102 N.W.2d 393 (1960) ("It is our considered judgment that we should adopt the rule that where an excessive verdict is not due to perversity or prejudice ... the plaintiff should be granted the option of remitting the excess over and above such sum as the court shall determine is the reasonable amount of plaintiff's damages, or of having a new trial on the issue of damages.") Accordingly, after reviewing the record, we conclude that the trial court did not erroneously exercise its discretion in finding that the verdict was not perverse.

B. Peck's counterclaim of professional malpractice was properly dismissed.
¶ 10 Peck argues that Corris's "failure, as Peck's agent, to abide by Peck's directives constitutes mal practice as a matter of law." He contends that he asked the trial court to reconsider its decision granting Corris's motion for summary judgment because it failed to follow the holding in Olfe v. Gordon, 93 Wis. 2d 173, 286 N.W.2d 573 (1980), which he perceives to be a finding of legal malpractice based solely on the failure to follow a client's directions. He contends that the trial court still questioned Olfe's "obviously critical ruling"[2] and refused to consider its binding effect. Peck insists that Olfe mandates a reversal of the trial court's grant of summary judgment. We are unpersuaded.
¶ 11 In an appeal from the entry of summary judgment, this court reviews the record de novo, applying the same standard and following the same methodology required of the trial court under WIS. STAT. § 802.08. See Green Spring Farms v. Kersten, 136 Wis. 2d 304, 315-17, 401 N.W.2d 816 (1987). That methodology is well known, and need not be repeated here. See § 802.08; Grams v. Boss, 97 Wis. 2d 332, 338-39, 294 N.W.2d 473 (1980).
¶ 12 In regard to legal malpractice actions:
the client has the burden of proving the existence of the relation of attorney and client, the acts constituting the alleged negligence, that the negligence was the proximate cause of the injury, and the fact and extent of the injury alleged. The last element mentioned often involves the burden of showing that, but for the negligence of the attorney, the client would have been successful in the prosecution or defense of an action.
Lewandowski v. Continental Cas. Co., 88 Wis. 2d 271, 277, 276 N.W.2d 284 (1979) (citation omitted). As such, the clientPeckhad the burden of establishing all four of these elements, including injury or damages. He failed to do so.
¶ 13 Peck argues that in Olfe, the plaintiff "did not claim that she was harmed by her attorney, Gordon's, representation." He is mistaken. As a result of Gordon's failure to secure a first mortgage, as instructed, instead of a second mortgage, Olfe lost tens of thousands of dollars, the recovery of which she sued her attorney for. See Olfe, 93 Wis. 2d at 177-78. The court concluded that Olfe was not suing because she was harmed by her attorney's lack of expertise, but that she was suing because her attorney failed to effectuate her intent, which, as was noted earlier, resulted in the loss of tens of thousands of dollars. Id. at 184. As such, Olfe concerned the issue of whether, in the absence of expert testimony, Olfe provided sufficient evidence to present to the jury to prove her negligence claim. The court concluded that expert testimony was not necessary, in that case, because "proof of negligence in failing to follow specific instructions concerning the nature and purpose of the documents desired does not require expert testimony." Id. (emphasis omitted). The court concluded that the case was governed by the law of agency, and fell "within the exception to the rule that expert testimony is necessary to establish the negligence of attorneys." Id. at 184-85. There was never a question as to whether there were any damages. Here, there is.
¶ 14 Assuming, for the sake of argument, that Peck adequately alleged all of the other elements, he has still failed to establish an essential element of his malpractice claiminjury or damages"that, but for the negligence of the attorney, [Peck] would have been successful in the prosecution or defense of an action." See Lewandowski, 88 Wis. 2d at 277. While Peck asserts in his appellate brief that "[a]t the very least [the] damages include all monies which they have unnecessarily paid out and have incurred in defending this lawsuit," that is insufficient. After Corris withdrew from the case, Peck's subsequent counsel timely filed the requested motion a year later, and it was denied. There is no indication that it would have been granted had it been filed earlier.[3] At most, Peck has speculated as to what may have happened if a series of events occurred or how the Illinois court might have reacted. That is not enough. Peck has failed to establish any damage he suffered as a result of what he claims was Corris's failure to abide by his directives. As such, his counterclaim of professional malpractice cannot survive as a matter of law. Accordingly, we affirm.
By the Court.  Judgment and orders affirmed.
NOTES
[1] Corris also sought sanctions, but the trial court reserved its ruling on that motion, and it is not a subject of this appeal.
[2] Peck quotes from Olfe v. Gordon, 93 Wis. 2d 173, 185, 286 N.W.2d 573 (1980), in identifying this "obviously critical ruling" and argues that Olfe "asserted that it was within the province of a jury to `determine the merits of Olfe's allegations that Gordon was negligent in that he failed to properly draft documents consistent with Olfe's instructions.'" See id.
[3] Moreover, "[d]elay by an attorney alone cannot cause damages unless it is probable that it caused the loss of a witness, passing of a statute of limitations or similar results. This is not what happened in the case before us." Schlomer v. Perina, 169 Wis. 2d 247, 253, 485 N.W.2d 399 (1992) (footnote omitted).