Gregg GODFREY, Plaintiff-Appellant,†

v.

Warren C. SCHROECKENTHALER, Keith C. Becker,
Robert Kozak, Phillip R. Rodenschmit, James Bentz,
Robert L. Jorgensen and Gregory Mosso, Defendants-
Respondents.

Court of Appeals

*No. 91–0694. Submitted on briefs December 10,
1991.—Decided April 1, 1993.*

(Also reported in 501 N.W.2d 812.)

†Petition to review denied.

1

For the plaintiff-appellant the cause was submitted on the briefs of *J. Thomas Haley* of Madison.

For the defendants-respondents the cause was submitted on the brief of *Bryan D. Woods* of *Jenswold, Studt, Hanson, Clark & Kaufmann* of Madison.

Before Eich, C.J., Gartzke, P.J., and Sundby, JJ.

SUNDBY, J. The sole issue in this appeal is whether a June 1, 1987 agreement between respondent Blizzard, a Wisconsin partnership, and appellant Gregg Godfrey, which contained an offer to sell a franchise, should have been registered with the Wisconsin Commissioner of Securities pursuant to sec. 553.21(1), Stats. The agreement provided that Godfrey would operate a Dairy Queen store in McFarland, Wisconsin, under a five-year lease with an option to purchase the business, the real estate and the Dairy Queen franchise rights at the end of the five-year term. Godfrey ceased operating the Dairy Queen, effective September 1, 1989. He subsequently filed this suit, seeking rescission of the agreement and damages, because Blizzard failed to register the agreement. Godfrey claims that no registration exemption applies.

Both parties moved for summary judgment. We consider their cross-motions for summary judgment independently and apply standard summary judgment methodology. The theory of Godfrey's case is that Blizzard and one of Blizzard's partners, Gregory Mosso, were franchisors to whom the registration exemption provided by sec. 553.23, Stats., does not apply. However, Godfrey's proof does not support his theory and therefore he failed to establish a *prima facie* case for summary judgment. Blizzard's proof supports its argument that it was a franchisee who offered to sell a franchise "for [its] own account." It therefore established a *prima facie* case that its offer to sell was exempted from registration by sec. 553.23. Godfrey's proof does not rebut Blizzard's *prima facie* case for summary judgment. Therefore, we affirm the trial court's grant of summary judgment dismissing Godfrey's action.

4

Section 553.21(1), Stats., provides: "No person may sell or offer in this state any franchise unless the offer of the franchise has been registered under this chapter or exempted under s. 553.22, 553.23, 553.235 or 553.25." Section 553.21, Stats., is part of the Wisconsin Franchise Investment Law, enacted in 1971 to require persons offering or selling franchises to make disclosures to prospective franchisees. The legislative purpose in enacting the law is set forth in section one of the act:

> It is the intent of this act to provide each prospective franchisee with the information necessary to make an intelligent decision regarding franchises being offered. Further, it is the intent of this act to prohibit the sale of franchises where such sale would lead to fraud or a likelihood that the franchisor's promises would not be fulfilled.

Section 1(2), ch. 241, Laws of 1971. *See also* Mett, *The Wisconsin Franchise Investment Law—Protection for Investors—Disclosure Guidelines for Franchisors,* WISCONSIN BAR BULLETIN, October 1972.[1] Thus, the hallmark of Wisconsin's franchise investment law, as well as similar legislative enactments,[2] is the disclo-

---

[1] R. Michael Mett, then assistant attorney general, drafted the Wisconsin Franchise Investment Law, as well as the administrative rules implementing it.

[2] Sixteen states have enacted similar franchise disclosure laws. 1 GARNER, FRANCHISE AND DISTRIBUTION LAW AND PRACTICE § 1:10, at 18 n.9 (1990 & Supp. 1992). Where required, disclosure is typically satisfied by completion of a Uniform Franchise Offering Circular (UFOC), designed by the North American Securities Administrators Association to simplify multi-state franchise registration. *Id.* Applications for registration of offers to sell and the sales of franchises in Wisconsin must comply

sure of information to assist franchisees in accurately evaluating business ventures in which they are considering the investment of substantial financial and personal resources.

However, the legislature has determined that certain offers to sell franchises are exempt from registration with the commissioner of securities because of the unlikelihood that the sale will lead to fraud or the franchisor's promises will not be kept. The two exemptions claimed by Blizzard in this case are contained in secs. 553.22 and 553.23, Stats.

Blizzard does not contend that its agreement with Godfrey was not an offer to sell a "franchise or interest in a franchise for value." Section 553.03(8r), Stats. Thus, we consider whether its offer was exempted from registration by either sec. 553.22 or 553.23, Stats. Section 553.22 exempts from registration offers or sales of · franchises by large, well established and well capitalized franchisors meeting certain requirements.[3] Section 553.23 exempts offers or sales by a franchisee "for the franchisee's own account." We conclude that Blizzard was a franchisee which offered to sell a Dairy Queen franchise to Godfrey "for [its] own account." In view of our conclusion that its offer was exempted from

with UFOC requirements. *See* Wis. Adm. Code sec. SEC 32.06. State franchise disclosure laws supplement minimum federal franchising disclosure standards required by Federal Trade Commission rule, which are also satisfied by compliance with UFOC requirements. *See* 16 C.F.R. § 436. *See generally* BUSINESS FRANCHISE GUIDE (Commerce Clearing House 1980 & Supp. 1992).

[3] Such exemptions are sometimes referred to as "blue-chip" exemptions. FRANCHISE AND DISTRIBUTION LAW AND PRACTICE · § 5:36, at 61.

registration by sec. 553.23, we need not consider whether its offer was also exempted by sec. 553.22.

■

Both parties moved for summary judgment and the trial court granted summary judgment to Blizzard, holding that both secs. 553.22 and 553.23, Stats., relieved Blizzard from the registration requirements of sec. 553.21(1), Stats. When reviewing the trial court's decision on a motion for summary judgment, we apply the same analysis as the trial court. *In re Cherokee Park Plat,* 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582–83 (Ct. App. 1983). Summary judgment methodology is well settled. *Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476–77 (1980). Cross-motions for summary judgment require that the reviewing court examine each party's motion individually. *City of Edgerton v. General Casualty Co.,* 172 Wis. 2d 518, 529, 493 N.W.2d 768, 772 (Ct. App. 1992). Thus, we will examine each party's proofs to determine whether any genuine issue of material fact precludes granting summary judgment as a matter of law to either party. *Grams,* 97 Wis. 2d at 338, 294 N.W.2d at 476–77.

Godfrey's affidavit includes the following. On June 1, 1987, he entered into a contract with Blizzard to operate a Dairy Queen store in McFarland. He paid Blizzard $17,000 as a down payment for the purchase of the real estate and to obtain the right to operate as a Dairy Queen franchisee or licensee. Blizzard did not offer him a disclosure statement with respect to the Dairy Queen store. One of Blizzard's partners, Gregory Mosso, informed Godfrey that Blizzard had an agreement with International Dairy Queen, Inc. (American Dairy Queen), via a third party, giving Blizzard certain rights if it built and operated ten Dairy Queen stores in

Dane County within ten years.[4] Blizzard established several other Dairy Queen stores in Dane County where the owner-operator entered into agreements with Blizzard similar to the Godfrey agreement.

Godfrey provided a supplemental affidavit submitting portions of Mosso's deposition. Mosso deposed that he and Robert Jorgensen, in partnership, operate other Dane County Dairy Queen stores and also lease other stores to operators under agreements similar to Godfrey's. The Mosso-Jorgensen partnership formed other partnerships with investors to lease and operate Dairy Queen stores. Their contribution to the partnerships, like the Blizzard partnership, was the Dairy Queen franchise. The other partners in the Blizzard partnership are "silent" partners who do not participate in management. From November 1, 1986, to June 1, 1987, Blizzard operated the McFarland store. Mosso further deposed that if the lessee-prospective franchisee, who is a party to an agreement similar to Godfrey's, exercises the option to purchase the Dairy Queen franchise, the franchise is transferred from the Mosso-Jorgensen partnership to the franchisee.

Blizzard also submitted several affidavits, including Mosso's, which contained the following additional averments. American Dairy Queen Corporation has allowed an individual named Albert Plaisted to establish Dairy Queen franchises in Dane County.[5] Mosso and Jorgensen formed a partnership to develop Dairy Queen franchises in Dane County under an agreement with Plaisted.[6] Godfrey received information from Blizzard regarding its franchise agreement with Amer-

---

[4] This agreement is not in the record.

[5] No agreement between American Dairy Queen and Plaisted is in the record.

[6] This agreement is not in the record.

ican Dairy Queen Corporation and American Dairy Queen's particular requirements prior to entering into the agreement with Blizzard.[7] Blizzard has no authority to develop franchises for American Dairy Queen and has never done so at any location other than in McFarland.

Mosso's supplemental affidavit includes the following additional averments. The Mosso-Jorgensen partnership agreement with Plaisted provides in part: "Mosso and Jorgensen agree to operate future retail stores at such locations as may be approved from time to time by the American Dairy Queen Corporation pursuant to the Dairy Queen Operator[']s Agreement[8] issued by the American Dairy Queen Corporation." Mosso periodically reviewed the McFarland Dairy Queen store's operation and noted on numerous occasions that it did not comply with Dairy Queen or Dane County sanitation standards.

Blizzard's counsel avers that the Blizzard partnership is a general partnership conducted in accordance with ch. 178, Stats. The partnership agreement provides that the purpose of the partnership is to conduct and operate Dairy Queen stores at such locations as the partnership may from time to time determine.[9]

On the basis of the affidavits filed, we find no genuine issue of fact material to this appeal. Further, Blizzard has established a *prima facie* case for summary judgment.[10]

---

[7] This information is not in the record.

[8] This agreement is not in the record.

[9] The partnership agreement is not in the record.

[10] The court has been inconvenienced in its consideration of this appeal by the lack of a complete record. Counsel are reminded that summary judgment is a drastic remedy which is not to be granted "unless the moving party demonstrates a right

■ We conclude that Blizzard's proof establishes a *prima facie* defense based on its claim that its offer to sell a Dairy Queen franchise is exempted from registration under sec. 553.23, Stats., as an offer of sale "for [its] own account." The exemption from registration of offers to sell franchises "for the franchisee's own account" is also found in the franchise investment laws of the states which have enacted similar laws. FRANCHISE AND DISTRIBUTION LAW AND PRACTICE § 5:37, at 63. *See also* MODEL FRANCHISE INVESTMENT ACT § 6(b) (North American Securities Administrators Association 1990). However, the parties cite no decisions in those states construing the phrase in the context of franchising nor has our research provided authority on this point.

The phrase "for its own account" or "for his own account" appears in state and federal laws regulating the offers to sell or sales of securities. We have examined numerous decisions in the securities area but find them of little help in construing the term in sec. 553.23, Stats. We note, however, that when chapter 553 was enacted, sec. 551.02(3), Stats. (1969), of the Wisconsin Uniform Securities Law defined a securities "broker-dealer" to mean "any person engaged in the business of effecting transactions in securities for the account of others or *for his own account*." (Emphasis added.) "Broker-dealer" did not include an issuer or the agent of a broker-dealer or issuer. Section 551.02(3)(a)-(b), Stats. (1969). Comparison shows that ch. 553, Stats. (1971), was patterned after ch. 551, Stats. (1969). *See also* Mett, *Wisconsin Franchise Investment Law* at 31. Section 551.21, Stats. (1969), made it

to a judgment with such clarity as to leave no room for controversy . . . ." *Grams v. Boss*, 97 Wis. 2d at 338, 294 N.W.2d at 477.

unlawful for any person to offer or sell any security in this state unless registered with the securities commissioner or exempted under sec. 551.22 or 551.23, Stats. Section 551.23(1), Stats., exempted "[a]ny isolated transaction, whether effected through a broker-dealer or not" from registration.

We believe that when the legislature enacted sec. 553.23, Stats., it intended a similar exemption for sales or offers to sell franchises. We discern a pattern of legislative intent to exempt sales or offers to sell securities and franchises from registration where the seller does not act as the agent of the issuer or franchisor, but acts in its "own name." *See e.g.*, 30A WORDS AND PHRASES 392, *Own Account* (1972 & Supp. 1992) (cross referencing "own account" with "own name").

Blizzard's proof satisfies us that its offer to sell the franchise was not made as Dairy Queen's agent, but in its own name and for its own account. Thus, it established a *prima facie* right to summary judgment, because its offer was exempted from registration pursuant to sec. 551.23, Stats.

We next examine Godfrey's proof to determine whether he has established a genuine issue of material fact that rebuts Blizzard's *prima facie* case for summary judgment. Godfrey's argument is that Blizzard was a franchisor and he was a prospective franchisee entitled to the protections of registration and disclosure. Godfrey cites sec. 553.03(4)(a), Stats., which provides:

"Franchise" means a contract or agreement, either express or implied, whether oral or written, between 2 or more persons by which:

1. A franchisee is granted the right to engage in the business of offering, selling or distributing

11

goods or services under a *marketing plan or system prescribed or suggested in substantial part by a franchisor;* and

2. The operation of the franchisee's business pursuant to such plan or system is substantially associated with the *franchisor's business and trademark,* service mark, trade name, logotype, advertising or other commercial symbol designating the franchisor or its affiliate; and

3. The franchisee is required to pay, directly or indirectly, a franchise fee. [Emphasis added.]

To support his motion and in opposition to Blizzard's motion for summary judgment, Godfrey presents affidavits to the effect that: (1) he was required to attend "a Dairy Queen school"; (2) he was required to operate under a marketing plan and "was subject to inspection by Dairy Queen management"; (3) the business was "substantially associated" with Dairy Queen's "tradename"; and (4) he paid $17,000 to Blizzard as a "franchisee fee." Godfrey's proof establishes that Blizzard offered to sell Godfrey a Dairy Queen franchise. It does not, however, establish that Blizzard was a "franchisor." Section 553.03(6), Stats., defines "franchisor" to "mean[ ] a person who grants a franchise." Blizzard's proof shows that it developed the McFarland Dairy Queen and offered to sell the franchise to Godfrey. Blizzard could not, however, "grant" a franchise to Godfrey; only American Dairy Queen could do that.

Godfrey argues that even if Blizzard was a franchisee, its offer to sell the Dairy Queen franchise was not exempted from registration by sec. 553.23, Stats., because the sale was "effected by or through a franchisor," Gregory Mosso. Godfrey's proof, however, does not show that Mosso was a "franchisor," as defined

12

in sec. 553.03(6), Stats. Godfrey's proof shows only that Mosso had the right to operate and sell Dairy Queen franchises in Dane County.[11]

We therefore conclude that Godfrey failed to rebut Blizzard's *prima facie* case. The trial court correctly granted Blizzard's motion for summary judgment.

*By the Court.*—Order affirmed.

---

[11] We do not consider whether any of Blizzard, Mosso, Mosso-Jorgensen, or Plaisted were "subfranchisor[s]," as defined in sec. 553.03(12), Stats., or whether an offer or sale of a franchise by a subfranchisor must be registered under sec. 553.21, Stats. Godfrey has not developed any argument to this effect. We will not develop the argument for him. *In re Balkus,* 128 Wis. 2d 246, 255 n.5, 381 N.W.2d 593, 598 n.5 (Ct. App. 1985). We note, however, that the offer or sale of an entire area franchise, sec. 553.03(2), Stats., by a subfranchisor for its own account is exempted from registration by sec. 553.23, Stats.