STATE of Wisconsin, Plaintiff-Respondent,

v.

Hilary H. KOCH, JR., and Barbara Miller-Koch, d/b/a Reedway Express, Defendants-Third Party Plaintiffs-Appellants,

v.

NORTH AMERICAN VAN LINES, INC., Third Party Defendant-Co-Appellant.

Court of Appeals

*No. 94–1230. Oral argument February 23, 1995.—Decided July 12, 1995.*

(Also reported in 537 N.W.2d 39.)

803

806

On behalf of the defendants-third party plaintiffs-appellants, there were briefs and oral argument by *Mark S. Des Rochers* of *Lawrence & Des Rochers, S.C.* of St. Nazianz. On behalf of the third party defendant-co-appellant, there were briefs and oral argument by *Charles B. Palmer* of *Krukowski & Costello, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, there was a brief by *James E. Doyle*, attorney general, and *Kathleen M. Ptacek*, assistant attorney general. There was oral argument by *Kathleen M. Ptacek*.

Before Brown, Nettesheim and Snyder, JJ.

SNYDER, J. Hilary H. Koch, Jr., Barbara Miller-Koch and North American Van Lines, Inc. (NAVL)

appeal from a summary judgment in favor of the State, ruling that the Kochs, doing business as Reedway Express, failed to provide worker's compensation insurance in violation of § 102.28(2)(a), STATS. The judgment also required Reedway to pay twice what it would have paid for worker's compensation insurance during periods of nonpayment pursuant to § 102.82, STATS., which the State calculated was in excess of $24,000, including interest.

Reedway argues that it provided adequate worker's compensation insurance by virtue of coverage it obtained through an agency agreement with NAVL. We conclude that Reedway's contractual arrangement with NAVL to provide it with worker's compensation insurance is void because it is inconsistent with §§ 102.28(2)(a) and 102.31, STATS., and the intent of the Worker's Compensation Act generally, in that it failed to provide coverage for all of its potential employees and all potential work-related activities of its employees. Therefore, Reedway was uninsured within the meaning of the Worker's Compensation Act and subject to the forfeitures under § 102.82(2)(a), STATS.

## I.

The following facts are undisputed. On December 11, 1989, Reedway entered into an agency agreement with NAVL whereby Reedway operated commercial motor vehicles hauling goods for customers of NAVL.[1] Reedway's exclusive business during the time period at issue was hauling goods for NAVL, although the agree-

---

[1] NAVL provides transportation services throughout the continental United States under its own name and through independent agents representing NAVL in local markets.

ment specifically allowed Reedway to haul for other companies.

As part of the agreement, NAVL obtained worker's compensation coverage for Reedway's drivers and drivers' helpers while operating under NAVL's interstate authority. Reedway paid the premiums for the insurance through deductions from its weekly compensation from NAVL.[2] Reedway never employed more than five people, and no claims for worker's compensation went uncompensated.

On January 30, 1991, the Department of Industry, Labor and Human Relations (DILHR) sent a notice informing Reedway that it was illegally uninsured since January 1, 1990. DILHR requested a remittance of $24,418.16, pursuant to § 102.82(2), STATS., unless Reedway could provide evidence of insurance covering January 1, 1990, to the present.[3] On February 7, 1991, Reedway forwarded a letter to DILHR which indicated that NAVL had requested its worker's compensation insurers to clarify their coverage by issuing a certificate to each individual covered by NAVL's policy. In addition, Reedway sent DILHR a copy of the agency agreement and certificates of insurance issued by Old Republic Insurance Company naming NAVL as the named insured and the Kochs as "certificate holders" for the period of September 1, 1990, through September 1, 1991. Each certificate indicated that it was evidence of worker's compensation coverage for the

---

[2] According to the addendum to the agreement, Reedway authorized NAVL to arrange for worker's compensation insurance and "debit [its] account an amount to be determined by North American Van Lines, Inc. but not to exceed 2 [cents] per mile."

[3] Section 102.82, STATS., was created by 1989 Wis. Act 64, § 55.

Kochs' "drivers and drivers' helpers while they are operating under the Interstate Authority of North American Van Lines, Inc."

On February 15, 1991, Reedway sent DILHR a certificate of insurance issued by National Union Fire Insurance Company to NAVL as the named insured for the period of September 1, 1989, through September 1, 1990. The certificate indicated that "Statutory Worker's Compensation coverage is provided for owners, operators and their employees while operating under the authority of North American Van Lines." On February 19, 1991, DILHR informed Reedway that the certificates of insurance were insufficient to indicate compliance with an employer's responsibilities under the Worker's Compensation Act because the policies were not issued to Reedway as the named insured. On February 26, Reedway purchased a separate worker's compensation policy.

The State subsequently determined that Reedway was an uninsured employer from January 1, 1990, through February 26, 1991, and commenced an enforcement action to collect twice what Reedway would have paid for insurance during that period pursuant to § 102.82(2)(a), STATS. Reedway filed a third-party claim against NAVL, alleging that NAVL breached its contract by failing to provide worker's compensation coverage for Reedway's employees in accordance with the law.

The State moved for summary judgment, and NAVL filed a cross-motion for summary judgment, which Reedway joined. The circuit court granted summary judgment in favor of the State.[4] The court

---

[4] The court retained Reedway's third-party complaint against NAVL. The issues raised by that complaint are not presently before this court.

concluded that Reedway violated § 102.28(2), STATS., and ordered the payment of $18,087.42 principal, $8311.66 prejudgment interest and postjudgment interest at the rate of twelve percent per year. Reedway then moved for reconsideration, which the trial court denied. However, the court amended the judgment, reducing the prejudgment interest to $6640.20, for a total assessment of $24,727.62. Reedway and NAVL appeal from the amended judgment.

## II.

Cross-motions for summary judgment require that the reviewing court examine each party's motion individually. *Godfrey v. Schroeckenthaler*, 177 Wis. 2d 1, 7, 501 N.W.2d 812, 814 (Ct. App. 1993). Because none of the parties alleges any dispute of material fact, we must determine whether any party is entitled to judgment as a matter of law. *See Raby v. Moe*, 153 Wis. 2d 101, 109, 450 N.W.2d 452, 455 (1990).

The legal issue to be decided is whether Reedway provided worker's compensation insurance as required by § 102.28(2)(a), STATS. The determination of whether the statutory mandates of the Worker's Compensation Act apply to undisputed facts is a question of law which we review de novo. *Nigbor v. DILHR*, 115 Wis. 2d 606, 611, 340 N.W.2d 918, 921 (Ct. App. 1983), *aff'd*, 120 Wis. 2d 375, 355 N.W.2d 532 (1984). Likewise, the interpretation of a statute is a question of law which we review without deference to the trial court. *Hake v. Zimmerlee*, 178 Wis. 2d 417, 421, 504 N.W.2d 411, 412 (Ct. App. 1993).

We begin by setting forth the relevant language of § 102.28, STATS.:

**(2)** REQUIRED INSURANCE; EXCEPTIONS. (a) *Duty to insure payment for compensation.* Unless exempted by the department, every employer, as described in s. 102.04(1), shall insure payment for [worker's] compensation in an insurer authorized to do business in this state.

It is undisputed that Reedway is an employer under § 102.04, STATS., and is therefore subject to the provisions of the Worker's Compensation Act. The State contends that Reedway violated its § 102.28(2)(a) employer responsibility by (1) not *insuring payment* for *all* employees ("insure payment" requirement) and (2) not insuring payment *in an insurer* ("named insured" requirement). We conclude that the "insure payment" issue is dispositive.

The State argues that § 102.28, STATS., unambiguously requires Reedway to insure payment in an insurer. The State opines that the term "insure payment" means to insure payment for all employees and that Reedway's policy scheme is defective because the agency agreement with NAVL only insures those employees who are drivers or drivers' helpers for NAVL.

Reedway, agreeing that § 102.28(2)(a), STATS., is unambiguous, interprets the statute to clearly accommodate the NAVL agency coverage scheme. Reedway contests the assertion that it has not provided for insurance of all its employees because the facts are that all of its employees are either drivers or drivers' helpers of NAVL business. Thus, all of the Reedway employees were covered during the relevant time period in question. Our task is to resolve the dispute between the interpretations.

▮▮

Our purpose when interpreting a statute is to determine the legislative intent. *Kluth v. General Casualty Co.*, 178 Wis. 2d 808, 815, 505 N.W.2d 442, 445 (Ct. App. 1993). In doing so, we must first examine the statute's language and we will resort to extrinsic aids only if the language is ambiguous. *State v. Frey*, 178 Wis. 2d 729, 737, 505 N.W.2d 786, 790 (Ct. App. 1993). "For a statute to be clear and unambiguous, its words, phrases and sentences must be subject to but one applicable meaning in the eyes of a reasonably well-informed individual." *Voss v. City of Middleton*, 162 Wis. 2d 737, 750, 470 N.W.2d 625, 630 (1991).

▮▮

We are satisfied that both "insure payment" interpretations of § 102.28(2)(a), STATS., are reasonable and, therefore, the statute is ambiguous. We resolve the ambiguity in favor of the State.

▮▮▮

In construing an ambiguous statute to ascertain its reasonable meaning, we may look to its history, context, subject matter and scope. *Kluth*, 178 Wis. 2d at 815, 505 N.W.2d at 445. We must consider the entire section and related sections when construing a statute. *NCR Corp. v. DOR*, 128 Wis. 2d 442, 449, 384 N.W.2d 355, 359 (Ct. App. 1986). Further, we liberally construe the worker's compensation law in order to reach the objectives of that law, *Green Bay Packaging, Inc. v. DILHR*, 72 Wis. 2d 26, 37, 240 N.W.2d 422, 428-29 (1976), and we will favor a construction that fulfills the purpose of the statute over a construction that defeats the manifest object of the act, *Moonlight v. Boyce*, 125 Wis. 2d 298, 303, 372 N.W.2d 479, 483 (Ct. App. 1985).

 We first consider the intent of the Worker's Compensation Act generally. The obvious purpose of the Act is the protection of injured workers. *See West Allis Sch. Dist. v. DILHR*, 116 Wis. 2d 410, 417, 342 N.W.2d 415, 420 (1984). Liability exists under the law "[w]here the employe sustains an injury." Section 102.03(1)(a), STATS. The term "employe" is defined as "[e]very person in the service of another under any contract of hire, express or implied . . .." Section 102.07(4), STATS.

 We conclude that when § 102.28(2)(a), STATS., is read in conjunction with these basic principles, it is clear that an employer must insure payment for worker's compensation for *every* employee in its service. In this case, however, the insurance procured by NAVL for Reedway specifically provided coverage only for Reedway "while their drivers and/or drivers' helpers are operating under North American Van Lines, Inc. interstate authority." Reedway's agency agreement with NAVL expressly permits Reedway to act as a temporary agent for other companies. Therefore, the potential exists for uncovered employees if Reedway were to perform work for any other company. Further, any employees hired by Reedway who were not drivers or drivers' helpers would not be covered under the NAVL policy.

Reedway argues that this potential gap in coverage is irrelevant under the facts of this case because all of its employees were engaged in interstate trucking for NAVL during the relevant time period. Were we to adopt this view, we would be permitting employers to arrange for less than full coverage—coverage limited to certain employees or certain working conditions. Accordingly, we conclude that the construction of

§ 102.28, STATS., advanced by Reedway and NAVL would defeat the obvious legislative purpose of the statute by allowing incomplete worker's compensation coverage for Wisconsin employees.

We also consider related statutes in construing § 102.28(2)(a), STATS. We conclude that § 102.31, STATS., further supports our interpretation that Reedway's insurance arrangement is violative of § 102.28(2)(a). Section 102.31 provides in relevant part:

> **(1)** (a) Every contract for the insurance of compensation provided under this chapter or against liability therefor is subject to this chapter and provisions inconsistent with this chapter are void.
>
> (b) Except as provided in par. (c), a contract under par. (a) shall be construed to grant full coverage of all liability of the assured under this chapter unless the department specifically consents by written order to the issuance of a contract providing divided insurance or partial insurance.

Reedway's coverage in this case derives from its contractual arrangement with NAVL. According to § 102.31, a contract "against liability" for worker's compensation, such as Reedway's in this instance, is void if inconsistent with ch. 102, STATS. Because we have already concluded that Reedway's contract for insurance is inconsistent with ch. 102, it is necessarily void according to § 102.31. Accordingly, Reedway is uninsured for purposes of ch. 102.

The trial court determined that Reedway was "partially insured" and therefore uninsured under § 102.28(2)(a), STATS., because coverage was limited to those business activities in which Reedway actually engaged rather than providing coverage for all potential business activities. Reedway contends that because

815

§ 102.31, STATS., construes every worker's compensation policy and every contract against liability for worker's compensation insurance to grant full coverage, *see* § 102.31(1)(b), all claims for worker's compensation made by its employees would be paid under its insurance arrangement. We disagree.

First, we reject the trial court's conclusion and Reedway's assertion that it was "partially insured." The term "partial insurance" is specifically defined in WIS. ADM. CODE § IND 80.61 to mean "self-insurance of a part of the liability and consent to the issuance of one or more policies on the remainder of the liability, as provided in ss. 102.28(2)(b) and 102.31(1), Stats." Sections 102.28(2)(b) and 102.31(1)(b) require specific written consent from the State for any partial insurance arrangement. No such consent was sought by Reedway in this case. Therefore, it cannot be considered partially insured under the law.

Second, we agree with the State that an employer cannot acquit itself of the statutory obligation to insure its employees merely by referring to the full coverage remedy of § 102.31, STATS., as a last resort. Reedway's full coverage argument renders meaningless the language of § 102.28(2)(a), STATS., which provides that every employer shall insure payment. In sum, reading § 102.28(2)(a) in conjunction with § 102.31 and the general purpose of ch. 102, STATS., it is apparent that Reedway's arrangement contravenes the intent and purpose of § 102.28(2)(a). Therefore, the trial court properly granted summary judgment in favor of the State regarding Reedway's statutory violation.[5]

---

[5] For the same reasons discussed regarding the State's summary judgment motion, NAVL and Reedway's summary judgment motion was properly denied.

## III.

We next turn to the assessment imposed by the State pursuant to § 102.82(2)(a), STATS. This statute states in relevant part:

(2) (a) . . . [A]ll uninsured employers shall pay to the department the greater of the following:
1. Twice the amount determined by the department to equal what the uninsured employer would have paid during periods of illegal nonpayment for worker's compensation insurance in the preceding 3-year period based on the employer's payroll in the preceding 3 years.
2. Seven hundred and fifty dollars.

*Id.* In addition, interest shall accrue on amounts not paid when due at the rate of one percent per month. Section 102.82(2)(b), STATS.

DILHR calculated that the amount Reedway "would have paid during periods of illegal nonpayment" was $9043.71. *See* § 102.82(2)(a)1, STATS. Therefore, the initial penalty imposed after multiplying by two was $18,087.42. Prejudgment interest as calculated on the date of the amended judgment equaled $6640.20. Further, postjudgment interest on the judgment accrues at the rate of twelve percent per year. *See* § 815.05(8), STATS.

Reedway first argues that because it "substantially complied" with the statutory requirements, § 102.82(2)(a), STATS., is not applicable. Reedway also contends that under the circumstances of this case, it is within our discretion to find that Reedway's insurance arrangement demonstrated substantial compliance. We disagree. We cannot conclude under any reading of the statute that it does not apply if an employer "sub-

817

stantially complies" with the Worker's Compensation Act, and Reedway fails to cite any case law in support of such a proposition.

Reedway next contends that under § 102.82(2)(a), STATS., it is entitled to credit for the amount it paid for the worker's compensation insurance that was obtained by NAVL, and the trial court erred in not considering any evidence of such payments. We disagree. Section 102.82(2)(a) requires that an uninsured employer pay twice the amount it would have paid during periods of illegal nonpayment. Here, we have already concluded that Reedway was uninsured under § 102.28, STATS. Therefore, Reedway is subject to double the amount it would have paid in order to properly insure payment. Reedway is essentially arguing that it is entitled to receive credit for its "illegal payments"—payments for worker's compensation which do not meet the requirements of the statute. The statute clearly does not provide for such an offset.

## IV.

Last, Reedway contends that our interpretation of §§ 102.28(2)(a) and 102.82, STATS., results in the statute being constitutionally defective, both procedurally and substantively. We begin with the strong presumption that the statute is constitutional. *State v. Iglesias*, 185 Wis. 2d 117, 133, 517 N.W.2d 175, 180, *cert. denied*, 115 S. Ct. 641 (1994). The party challenging the statute must show it to be unconstitutional beyond a reasonable doubt. *Id.*

Reedway argues that § 102.28, STATS., is procedurally defective because a reasonable employer in

818

Reedway's position would not have been alerted that its insurance arrangement with NAVL contravened the law. We disagree. As we have already concluded, the statute when read with § 102.31, STATS., and the general principles of ch. 102, STATS., reasonably advises that a covered employer must provide insurance for every employee and for every potential activity engaged in by its employees unless the employer receives prior written approval of an alternative insurance arrangement.

Reedway also alleges that § 102.82, STATS., is substantively defective because it violates "the 'fundamental fairness' aspect of due process." Reedway contends that the penalty imposed under the statute is so severe, unreasonable and unwarranted that it is unconstitutional. *See, e.g., Southwestern Tel. & Tel. Co. v. Danaher*, 238 U.S. 482, 490-91 (1915) (holding that a statute which exacts a penalty beyond the bounds of reason is unconstitutional). Further, Reedway argues that if in fact it technically violated the law, the penalty amount is out of proportion with the nature of the violation considering that Reedway complied with the spirit of the law by obtaining worker's compensation coverage.

"When statutes are challenged on due process grounds, the test is whether the means chosen have a reasonable and rational relationship to the purpose or object of the enactment; if it has, and the object is a real and proper one, the exercise of the police power is valid." *Messner v. Briggs & Stratton Corp.*, 120 Wis. 2d 127, 135, 353 N.W.2d 363, 367 (Ct. App. 1984) (quoted source omitted). We agree with the State that the statute is not invalid on due process grounds. The object of the statute is to support the legitimate state policy of

avoiding uncompensated workplace injuries. The collection of forfeitures from uninsured employers under § 102.82, STATS., in order to pay benefits to employees whose employers violate the insurance requirement is reasonable and rationally related to the object. *See* §§ 102.80 and 102.81, STATS. (establishing compensation fund for injured employees of uninsured employers).

While we agree with the trial court and Reedway that the statute as applied in this case is harsh, we also agree with the trial court's conclusion that such results cannot be cured "through some guise of statutory interpretation." The statutory scheme reflects a policy decision by the legislature. "[P]olicy considerations regarding the fairness of the provisions of the Worker's Compensation Act are the responsibility of the legislature and not within the domain of the judiciary." *Jadofsky v. Iowa Kemper Ins. Co.*, 120 Wis. 2d 494, 497-98, 355 N.W.2d 550, 552 (Ct. App. 1984). Accordingly, Reedway's complaints are more properly directed to the legislature.

*By the Court.*—Judgment affirmed.