KINSHIP INSPECTION SERVICE, INC., Raymond Kindschy and Patricia Kindschy, Plaintiffs-Respondents-Cross-Appellants,

v.

Roy NEWCOMER and Scott Newcomer, Defendants-Appellants-Cross-Respondents.

Court of Appeals

*No. 98–2043. Submitted on briefs July 30, 1999.—Decided November 24, 1999.*

(Also reported in 605 N.W.2d 579.)

On behalf of the defendants-appellants-cross-respondents, the cause was submitted on the briefs of *Ronald S. Stadler* and *Alison E. Brewer* of *Stadler & Schott, S.C.* of Brookfield.

On behalf of the plaintiffs-respondents-cross-appellants, the cause was submitted on the brief of *Jacob Brennan Heymann* of Milwaukee.

Before Nettesheim, Anderson and Snyder, JJ.

¶ 1. SNYDER, J. Roy Newcomer and Scott Newcomer (the Newcomers) appeal from a judgment voiding a purchase agreement to sell their home inspection business to Raymond Kindschy and Patricia Kindschy (the Kindschys), d/b/a Kinship Inspection Service, Inc., and dismissing their breach of contract claim against the Kindschys. The Newcomers contend that there was insufficient evidence to sustain the jury's verdict, that the jury's verdict was perverse and that the Kindschys engaged in "trial by ambush." We reject these arguments.

¶ 2. The more significant issue raised by this case is in the Kindschys' cross-appeal where they argue that the trial court improperly dismissed their claims under ch. 553, STATS., 1993–94, the Wisconsin Franchise Investment Law (WFIL). Based on the evidence the Kindschys presented at trial, we conclude that there was sufficient evidence to establish a WFIL

violation because the Newcomers had failed to include in their Uniform Franchise Offering Circular (UFOC) documents containing projected earnings and historical financial data for the Newcomers' business and franchise. We therefore reverse this portion of the judgment and remand for a new trial on this issue.

## BACKGROUND

¶ 3. In October 1995, the Kindschys purchased from the Newcomers a "Newcomer's of America Property Inspection Services, Inc." franchise (the franchise) for the greater Milwaukee area. In a separate transaction, the Kindschys purchased the assets of the Newcomers' home inspection business called "Newcomer's Home Inspection Service, Inc." (the business). The Kindschys paid $50,000 in cash for the franchise and executed an Asset Transfer Agreement and a note for $200,000 for the Newcomers' business assets.

¶ 4. Prior to the sale of the franchise and business, Scott Newcomer presented Ray Kindschy a copy of the UFOC, which had been submitted to the Wisconsin Commissioner of Securities upon registration of the franchise and contained information about the Newcomers' franchise.[1] Ray Kindschy was also given sales, financial and accounting data, and a projection of future sales and finances for the Newcomers' business.

¶ 5. In May 1997, the Kindschys filed suit against the Newcomers alleging (1) a violation of WFIL, (2) fraud and misrepresentation, and (3) breach of contract. The Kindschys claimed that the Newcomers misrepresented past and projected sales and financing data. They also asserted that the Newcomers failed to provide them with a customer list that was

---

[1] The UFOC is not included in the record.

promised under the Asset Transfer Agreement. The Newcomers counterclaimed, alleging that the Kindschys breached their promise to pay the $200,000 note which had an unpaid balance of $195,509.49.

¶ 6. On April 7, 1998, a jury trial was commenced. At the close of the Kindschys' case-in-chief, the Newcomers moved to dismiss all of the Kindschys' claims on the basis that there was no evidence to sustain a finding in their favor. The court ruled that the Kindschys had failed to prove a violation of ch. 553, STATS., but denied the motion as to the common law fraud and misrepresentation claim. Upon the Kindschys' request, the court dismissed their breach of contract claim.

¶ 7. At the trial's conclusion, the jury was presented five special verdict questions.

> Question No. 1: Did Scott Newcomer make an untrue representation of fact to Ray Kindschy based on his own knowledge or in circumstances in which he necessarily ought to have known the facts?
> ANSWER: _____ (Yes or No)

> Question No. 2: If you answered "Yes" to Question No. 1, then answer this question: Did the plaintiff, Ray Kindschy, believe such representation to be true and justifiably rely on it to his pecuniary damage?
> ANSWER: _____ (Yes or No)

> Question No. 3: If you answered "Yes" to both Question No. 1 and Question No. 2, then answer this question: What sum of money, if any, will fairly and reasonably compensate Ray Kindschy for his damages?
> ANSWER: $_____

Question No. 4: Have the plaintiffs breached their contract with the defendants with respect to payments due under the Asset Purchase Agreement?

ANSWER: _____ (Yes or No)

Question No. 5: If you answered "Yes" to Question No. 4, then answer the following question: What sum of money will fairly and adequately compensate the defendants as a result of the plaintiffs' breach of contract?

ANSWER: $195,508.00 (Answered on stipulation by the Court)

After initially deliberating, the jury submitted the following question to the court:

The questions ask for a dollar amount. We want to cancel [the] note going forward (from 1996 forward). We do not want [the] Kindschy's to pay additional or the Newcomer's to return the money. How do we word our answer?

The court advised the jury that it should review the evidence and the jury instructions that it had been given, and that it should not concern itself with the final outcome of the lawsuit. The jury then returned a verdict finding that Scott Newcomer had made a misrepresentation and that the Kindschys had relied on it to their pecuniary damage, but that the Kindschys were entitled to $0 in damages.[2] The jury also found that the Kindschys had not breached their contract with the Newcomers.

¶ 8. The Newcomers filed postverdict motions requesting that the court change the jury's answers on its special verdict questions regarding Scott New-

[2] Although no damages were found, the result of the jury's misrepresentation finding was the cancellation of the Kindschys' note.

comer's liability for misrepresentation and grant the Newcomers a new trial on their breach of contract claim. The court denied the Newcomers' motion and they now appeal.

## DISCUSSION

### A. Newcomers' Appeal

*1. Sufficiency of the Evidence*

¶ 9. The Newcomers claim that there was insufficient evidence to support the jury's conclusion that Scott Newcomer made a misrepresentation. In reviewing the jury's verdict, we note that an appellate court's review of a jury's verdict is "severely circumscribed." *Staehler v. Beuthin*, 206 Wis. 2d 610, 617, 557 N.W.2d 487, 489 (Ct. App. 1996). We consider "whether there is any credible evidence in the record on which the jury could have based its decision. The evidence is viewed in the light most favorable to sustain the verdict; we do not look for credible evidence to sustain a verdict the jury could, but did not, reach." *Lundin v. Shimanski*, 124 Wis. 2d 175, 184, 368 N.W.2d 676, 681 (1985) (quoted source omitted). We indulge in every presumption in support of the verdict and note that this is even more true when the verdict has the trial court's approval. *See Anderson v. Alfa-Laval Agri, Inc.*, 209 Wis. 2d 337, 352, 564 N.W.2d 788, 795 (Ct. App. 1997). We further add that the credibility of witnesses and the assignment of weight afforded to witness testimony are left to the province of the jury. *See Staehler*, 206 Wis. 2d at 617–18, 557 N.W.2d at 489–90.

¶ 10. The Kindschys' misrepresentation claim was presented to the jury as a claim of strict responsi-

bility misrepresentation. The elements of this claim are (1) a representation of fact, (2) that is untrue, (3) based either on personal knowledge or under circumstances where the defendant necessarily ought to have known the truth or untruth of the statement, (4) the defendant's economic interest in the transaction, and (5) the plaintiff's belief in the representation. *See D'Huyvetter v. A.O. Smith Harvestore Prods.*, 164 Wis. 2d 306, 336, 475 N.W.2d 587, 598 (Ct. App. 1991); WIS JI—CIVIL 2402. These elements were set forth under special verdict Questions No. 1 and No. 2.

¶ 11. The Newcomers contend that the Kindschys' misrepresentation claim fails because no credible evidence was presented to establish that Scott Newcomer made an untrue representation of fact or that the Kindschys relied upon any such statement to their pecuniary damage. We will address each contention in turn.

¶ 12. The Kindschys' misrepresentation claim was based upon two exhibits depicting past and projected revenues, expenses and income for the Newcomers' business. Exhibit one, entitled "Historical Financial Data for Newcomer's Home Inspection Services, Inc—Milwaukee Area and Projections for 1995," was presented to the Kindschys before their October 1995 purchase. It provided financial data from 1992 to 1994 and projected earnings for 1995. Exhibit three, entitled "Newcomer's Home Inspection Service, Milwaukee—1994 Actual," was presented to an earlier prospective purchaser, Mike Skauge, before the Kindschys negotiated their purchase. It gave the financial data for the Newcomers' business in 1994.

¶ 13. At trial, Ray Kindschy pointed out differences in the income and expenses represented in exhibits one and three for 1994. Specifically, Kindschy

testified that the number of inspections shown in exhibit one was 1525 while the number in exhibit three was 1484; the average inspection price in exhibit one was $225 while the average price in exhibit three was $250; and the payroll for exhibit one was $145,327 and $166,950 for exhibit three. Kindschy concluded that "[w]hen you have two totally different sets of numbers that are marked actual for 1994, they can't both be right."

¶ 14. Skauge testified that exhibit three was inaccurate because it contained a $250 average price per inspection for 1994 when his experience was $215 or $225 per inspection. He also stated that 1484 inspections for 1994 was not reasonable based on his experience. Skauge testified that when he was considering purchasing the Newcomers' business, he worked through the numbers in exhibit three and came to the conclusion that they were incorrect. He therefore decided not to purchase the Newcomers' business.

¶ 15. During the postverdict hearing, the court reviewed the jury's findings. It concluded that "[i]t's clear . . . that the jury found that a misrepresentation of fact was made by the defendant, Scott Newcomer, to the plaintiffs and that the plaintiffs relied on that representation."

¶ 16. The Newcomers contend that Kindschy's and Skauge's testimony was insufficient to carry the Kindschys' burden of showing a misrepresentation. The Newcomers argue that because the Kindschys did not see exhibit three until after their purchase of the business, they could not have relied upon it in deciding to purchase the business. The Newcomers therefore conclude that the exhibit cannot support the jury's verdict.

568

¶ 17. We agree with the Newcomers that any alleged misinformation in exhibit three cannot be the source of a misrepresentation claim because the exhibit was not shown to the Kindschys until after their purchase of the business. However, we see no reason why exhibit three cannot provide evidence of misrepresentation in exhibit one. Indeed, we are satisfied that the Kindschys presented credible evidence to show that misrepresentations had been made. Although the Kindschys offered no evidence directly refuting exhibit one's figures, the jury could have relied upon inconsistencies between exhibits one and three to conclude that the Newcomers had provided misinformation in exhibit one. One reasonable inference the jury could have made from the inconsistent information is that the Newcomers had altered the data given to the Kindschys in order to make their business appear more profitable than it was. We therefore conclude that when viewed in the light most favorable to sustain the verdict, there was sufficient evidence to sustain the jury's determination.

¶ 18. The Newcomers next assert that there was no credible evidence to establish that the Kindschys relied upon a misrepresentation to their pecuniary loss. They point out that while the jury answered "yes" to special verdict Question No. 2 that Ray Kindschy relied upon Scott Newcomer's misrepresentation to his "pecuniary damage," the jury also found $0 in damages. The Newcomers conclude that because the Kindschys were not damaged, no reasonable jury could have concluded that the Kindschys relied upon any misrepresentations to their pecuniary loss. We are not persuaded by the Newcomers' argument.

¶ 19. Prior to filing suit against the Newcomers, the Kindschys had paid $50,000 in cash for the Newcomers' franchise, $4492 of the $200,000 loan and $14,853 in royalties and franchise fees. The result of the jury's verdict was the cancellation of the Kindschys' note which had a balance of $195,508. Therefore, although the jury did not find any monetary damages under special verdict Question No. 3, it did intend for the Kindschys to avoid the remaining $195,508 in debt. As the jury expressed to the court, "[w]e want to cancel [the] note going forward (from 1996 forward). We do not want [the] Kindschy's to pay additional or the Newcomer's to return the money." We are persuaded that a pecuniary damage was found in the amount of the balance of the Kindschys' note.

## 2. *Perverse Verdict*

¶ 20. The Newcomers request a new trial on the breach of contract issue because the jury purportedly disregarded the court's instruction to answer the special verdict questions without regard to the outcome of the lawsuit. The Newcomers contend that in finding that the Kindschys had not breached their contract with the Newcomers, the jury's verdict was perverse. We disagree.

¶ 21. A jury's verdict must be affirmed if there is any credible evidence to support it. *See Staehler*, 206 Wis. 2d at 617, 557 N.W.2d at 489. This is even more true when the verdict has the trial court's approval because the court is in a "better position to determine whether perversity permeated the verdict." *Redepenning v. Dore*, 56 Wis. 2d 129, 134, 201 N.W.2d 580, 583 (1972). Further, a verdict is perverse when the record

evinces the jury's refusal to follow the trial court's instructions on a point of law, or the verdict reflects highly emotional, inflammatory or immaterial considerations by the jury or its unfair prejudgment of the case. *See id.*

¶ 22. Here, the trial court reviewed the jury's negative answer to special verdict Question No. 4 regarding breach of contract. At the postverdict hearing, the court stated that the jury clearly found a misrepresentation of fact and that the Kindschys had relied upon it. The court noted that the jury was read WIS J I—CIVIL 3068, entitled "Voidable Contracts: Duress, Fraud, Misrepresentation," which provides, "There must be full and free consent by the parties to the terms of a contract. If consent of a party is gained through duress, fraud, or misrepresentation, that party may either avoid or ratify the contract." The court then explained:

> I believe that when the jury read that instruction and considered that instruction that they came to the conclusion that the Kindschys could avoid the contract in view of the misrepresentations of fact which they already found in questions one and two and therefore found that there was no breach, because under the instructions given to them they could avoid the contract if there was a misrepresentation made.

■

¶ 23. We agree with the trial court. The jury was presented with evidence of the Newcomers' misrepresentation. It was later read an instruction stating that a party may avoid a contract that was entered into through misrepresentation. Pursuant to this instruction, the jury was in a position to find the parties'

contract voidable based upon the Newcomers' conduct. If the contract was voidable then the Kindschys could not have been liable for breach of contract. Additionally, the jury was presented evidence that the Newcomers had failed to provide the Kindschys with a significant business asset—the customer list—as part of the Asset Transfer Agreement.[3] The Kindschys argued at trial that by not receiving the customer list, the Newcomers had failed to perform the contract. We are satisfied that there was credible evidence presented to establish that the Kindschys did not breach the contract.

¶ 24. In addition, the record does not indicate that the jury refused to follow the court's instruction. When the jury asked the court how it should phrase its answer to the special verdict, the court responded that it should review the evidence and the jury instructions, and that it should not concern itself with the final outcome of the lawsuit. The jury then returned a verdict finding no breach of contract. The Newcomers claim that this verdict runs contrary to the court's instruction. We fail to see how. The jury answered each of the special verdict questions as it was instructed. The Newcomers contend that the jury's question to the court demonstrated that it found that the Kindschys had breached the contract. We disagree. The jury's intention to cancel the note from 1996 forward, to relieve the Kindschys from having to "pay additional" and to relieve the Newcomers from having to return the money is wholly consistent with a finding of misrepresentation and failure to perform on the Newcomers' part and therefore is consistent with a

---

[3] According to the Asset Transfer Agreement, the customer list was valued at $100,000.

finding of no breach of contract by the Kindschys. Thus, we reject the Newcomers' argument.

### 3. "Trial by Ambush"

¶ 25. The Newcomers further complain that they are entitled to a new trial because the court erred in allowing the Kindschys to engage in "trial by ambush" by withholding the "data" they intended to use to support their misrepresentation claim. The Newcomers assert that the Kindschys' refusal to provide specific information regarding the misrepresentations prevented the Newcomers from preparing a meaningful defense. We are convinced that the trial court appropriately exercised its discretion in denying the Newcomers' motion to dismiss.

¶ 26. Wisconsin courts have discretion to sanction parties for their refusal to comply with court orders and for failure to prosecute an action. *See Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 273–74, 470 N.W.2d 859, 863 (1991). A trial court's decision to dismiss an action is discretionary and will not be disturbed unless the party claiming to be aggrieved by the decision establishes that the trial court has misused its discretion. *See id.* at 273, 470 N.W.2d at 863. A discretionary decision will be sustained if the court has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *See Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175, 184 (1982). The issue is not whether an appellate court as an original matter would have dismissed the action; it is whether the trial court exceeded its discretion in doing so. *See Johnson*, 162 Wis. 2d at 273, 470 N.W.2d at 863.

¶ 27. The Newcomers first assert that the Kindschys' complaint mentioned "data" without specifically defining the term and that the complaint only referenced "sales, financial and accounting data for at least three years of Existing Business operations, and a projection for future years of Existing Business operation." The Newcomers next state that the Kindschys' discovery responses simply declared that the Newcomers provided false information during meetings and phone conversations in August and September 1995, that the data at issue "is contained on projections of earnings potential provided by the Newcomers during August and September 1995," that the data "will be produced," and that the data refers to "[h]istoric data for the business and future projections." The Newcomers further point out that the Kindschys' supplemental interrogatory responses merely provided that "[t]he data [was] contained on projections or earnings potential provided by the Newcomers during August and September 1995" and that the data would be produced. The Newcomers state that it was not until the hearing on their motion to dismiss held on April 2, 1998, five days before trial, that they learned what data the Kindschys were relying upon. The Kindschys informed the Newcomers that "everything we intend to introduce at trial with regards to the data, was marked as exhibits at Scott Newcomer's [deposition]." ·

¶ 28. The trial court denied the Newcomers' motion to dismiss, finding that the information the Newcomers requested "could have been discovered through oral depositions, certainly, during the pendency of this matter and during the time that you were involved with it." We agree. The Newcomers had the exhibits the Kindschys were relying upon since at least

November 1997, the time of Scott Newcomer's deposition. In addition, the Newcomers had sufficient time, five days, prior to trial to prepare a defense to the Kindschys' misrepresentation claim once the Kindschys confirmed which documents constituted their data. While we recognize that the Kindschys were less than forthcoming in responding to the Newcomers' requests, we are not persuaded that the Newcomers were prejudiced by this delay. Moreover, we find unconvincing the Newcomers' assertion that they were "ambushed" and that they had insufficient time to address the Kindschys' data. We conclude that the trial court did not misuse its discretion in denying the Newcomers' motion.

## B. Kindschys' Cross-Appeal

¶ 29. The Kindschys argue that the trial court erroneously dismissed their ch. 553, STATS., claim at the close of their case-in-chief.[4] They claim that WFIL was violated when the Newcomers showed them historical financial data and projected franchise earnings that should have been contained in their Uniform Franchise Offering Circular (UFOC), *see* § 553.41(1), STATS., and because the Newcomers made misrepresentations of financial data which was not provided in the UFOC, *see* § 553.41(3). We agree.

¶ 30. A motion to dismiss at the end of the plaintiff's case should only be granted if the evidence, viewed in the light most favorable to the plaintiff, is clearly insufficient to sustain a verdict in the plaintiff's

---

[4] Because the Kindschys' purchase of the Newcomers' franchise occurred in 1995, all references to ch. 553, STATS., will be to the 1993–94 statutes. *See Sterling Vision DKM, Inc. v. Gordon*, 976 F. Supp. 1194, 1197–98 (E.D. Wis. 1997).

favor. *See Gries v. First Wis. Nat'l Bank*, 82 Wis. 2d 774, 777, 264 N.W.2d 254, 256 (1978). If the jury could disagree on the facts or on inferences to be drawn from the facts, the motion must be denied and the case submitted to the jury. *See id.* In reviewing the trial court's decision to grant a motion to dismiss, this court views the evidence in the light most favorable to the appellant. *See Olfe v. Gordon*, 93 Wis. 2d 173, 185, 286 N.W.2d 573, 579 (1980). However, we will not reverse the trial court's decision unless it was clearly wrong. *See id.* at 185–86, 286 N.W.2d at 579.

¶ 31. The purpose of WFIL is

> to provide each prospective franchisee with the information necessary to make an intelligent decision regarding franchises being offered. Further, it is the intent of this act to prohibit the sale of franchises where such sale would lead to fraud or a likelihood that the franchisor's promises would not be fulfilled, and to protect the franchisee.

Section 1(2), ch. 241, Laws of 1971; *see Godfrey v. Schroeckenthaler*, 177 Wis. 2d 1, 5, 501 N.W.2d 812, 813 (Ct. App. 1993). To this end, the law requires franchisors to be registered. *See* § 553.21, STATS. Section 553.26, STATS., lists numerous items that a registration application must contain, including "[a] copy of any statement of estimated or projected franchisee earnings prepared for presentation to prospective franchisees or subfranchisors, or other persons, together with a statement setting forth the data upon which such estimation or projection is based." Section 553.26(16). In addition, § 553.27(8), STATS., states that "[t]he registration statement shall consist of a circular containing those items required by s. 553.26 to be disclosed to investors together with other docu-

ments which the commissioner by rule prescribes." In order to sell a franchise, a franchisor must provide a prospective franchisee with a copy of the franchisor's UFOC. *See* § 553.27(4).

¶ 32. Fraudulent practices of a franchisor are prohibited by § 553.41, STATS. Section 553.41(1) addresses false or misleading statements made to the commissioner of securities.

> No person may make or cause to be made, in any document filed with the commissioner or in any proceeding under this chapter, any statement which is, at the time and in the light of the circumstances under which it is made, false or misleading in any material respect or, in connection with any statement required to be made under s. 553.31 (1), omit to state a material fact necessary in order to make the statement made, in the light of the circumstances under which they are made, not misleading.

*Id.* If a person violates subsec. (1), the franchisee may bring an action for rescission. *See* § 553.51(1), STATS. Section 553.41(3) concerns false or misleading statements, not included under subsec. (1), that are presented to prospective buyers of a franchise.

> No person may offer, purchase or sell a franchise in this state by means of any written or oral communication not included in sub. (1) which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

Section 553.41(3). If a franchisor violates subsec. (3), the franchisee may bring a claim for damages. *See* § 553.51(2).

¶ 33. At trial, the Kindschys' evidence of misrepresentation included exhibit one, setting forth the financial information from 1992 to 1994 and projected earnings for the Newcomers' business for 1995, and exhibit three, documenting the Newcomers' financial data for 1994. The Kindschys also introduced exhibit two, entitled "Five Year Cash Flow Projection For Milwaukee Franchise," which, like exhibit one, was presented to the Kindschys prior to their purchase of the Newcomers' franchise and business. Scott Newcomer testified that neither exhibit one nor two was included in the Newcomers' UFOC.

¶ 34. At the close of the Kindschys' case, the Newcomers argued that the Kindschys had offered no evidence dealing with "the registration of the franchis[or] in regard to the franchise registration statement"; that there was no violation of § 553.21, STATS., concerning registration; that the Kindschys never revealed any false, misleading or incomplete statement in the UFOC contrary to § 553.41(1), STATS.; and that the Kindschys were unable to show that any statements made by the Newcomers were false, misleading or incomplete contrary to § 553.41(3). The court agreed with the Newcomers, finding that the Kindschys had failed to prove a violation of ch. 553, STATS., because no evidence was submitted addressing the application for registration under §§ 553.21 and 553.26, STATS. The court also determined that the Kindschys had failed to show any material false, misleading or incomplete statements in the Newcomers' UFOC or in any communication separate from the UFOC. The court added that "[e]xhibits 1 and 2 dealt with the sale of the assets of Newcomer's Home Inspection Service, Inc., and were not concerned with the sale of the franchise."

¶ 35. We conclude that the trial court incorrectly applied WFIL. As a franchisor, the Newcomers were required to submit a registration application containing, among other things, *any* statement of projected franchisee earnings and a statement describing the data upon which the projections were based. *See* § 553.26(16), STATS. In addition, pursuant to § 553.26(16), the Newcomers' registration statement was to include their UFOC, which, in turn, was to contain all the items listed under § 553.26, including any statements of projected franchisee earnings and supporting data. Furthermore, the Newcomers were to provide the Kindschys a copy of their UFOC. Ultimately, any statement of historical or projected financial information that the Newcomers intended to present to a prospective franchisee had to be included in their UFOC and therefore submitted to the Wisconsin Commissioner of Securities.

¶ 36. Here, exhibit one provided a projection of future earnings for the Newcomers' business for 1995 and set forth financial data for 1992 to 1994. In addition, exhibit two was marked "Five Year Cash Flow Projection For Milwaukee Franchise" and, without doubt, was a statement of estimated franchisee earnings. Contrary to the court's finding, exhibits one and two pertained to the assets of both the Newcomers' business and the franchise. We are convinced that the documents qualify as projected franchisee earnings information and supporting data under § 553.26(16), STATS. As such, this information should have been included in the Newcomers' UFOC. Because it was not, the Kindschys have a valid claim under § 553.41(1) and (3), STATS. We conclude that the trial court erred in dismissing the ch. 553, STATS., action and thus reverse

this portion of the judgment and remand for a new trial on the Kindschys' claim.

¶ 37. Costs are denied to all parties.

*By the Court.*—Judgment and orders affirmed in part; reversed in part and cause remanded.